AULONG BROWN, Appellee, v. C. L. WARD AND WARREN GLEASON, Appellants, AND C. L. WARD, Appellant, v. AULONG BROWN, Appellee.

Landlord and Tenant: CONSTRUCTION OF LEASE: RIGHT TO REMOVE FIXTURES. The defendant Ward, owner of the mill, sold a half interest to plaintiff, receiving part of the price, but at the time made no conveyance. Two years later Ward leased the whole property with the provisions that the lessee should repair the mill, put it in good condition and keep it running for the accomodation of the public; that if the lessee should at any time suffer loss to the property through neglect to keep it in good order he would surrender the premises in as good condition as it then was, natural wear and decay excepted, and if lessor should sell pending the lease, lessee, on notice, would give up possession on payment of "'the true value of any machinery or improvements then being upon the premises or with the privilege to remove the same therefrom." The lessee retained possession until the expiration of his term, prior to which the grantee of the half interest procured a de-
  ( for specific performance. Held, that in an action by

such grantee for partition and an accounting, the lessee was not entitled under the terms of the lease to remove the machinery put in the mill by him.

**Reformation of a Lease.** Equity will reform a lease where it is
2  clearly and satisfactorily shown that the instrument fails to express the mutual understanding of the parties, when given a legal construction, though in language selected by themselves.

*Appeal from Buena Vista District Court.*—HON. A. D. BAILIE, Judge.

WEDNESDAY, FEBRUARY 11, 1903.

BOTH actions were begun for the partition of certain real estate, and were consolidated for the purposes of trial. From the decree entered, Ward and Gleason appeal.—*Modified* and *affirmed.*

*F. F. Faville* and *Healy & Healy* for appellants.

*Carr & Parker* and *F. H. Helsell* for appellee.

WEAVER, J.—The history of this case, which is somewhat obscured by the variety and number of the pleadings filed, may be stated as follows: In the year 1888, Ward, being the owner of certain lots and gristmill in the town of Linn Grove, entered into an agreement to sell and convey a half interest therein to plaintiff. A part of the purchase price was paid, but, no conveyance having been made or delivered, plaintiff, in 1894, brought an action against Ward asking specific performance of the agreement, and for an accounting for rents. The district court found plaintiff entitled to a conveyance upon payment by her of a certain balance of the purchase price appearing to be yet due. On appeal to this court that decree was affirmed. *Brown v. Ward,* 110 Iowa, 123. Thereafter, the provisions of said decree having been complied with, these proceedings were instituted for partition. To avoid confusion in reference to the consolidated cases, the word "plaintiff,"

as used in this opinion, will apply to Brown alone, and the word "defendants" to Ward and Gleason.

In the year 1890—two years after the date of the agreement between Ward and plaintiff for the sale of the property, and four years before the commencement of this action for its specific performance—Ward leased the property to the defendant Gleason and one Sitz. The lease was in writing, and, omitting some immaterial provisions, is in the following words: "This agreement, made and entered into this 4th day of June, A. D. 1890, witnesseth: That O. L. Ward, of Buena Vista county, state of Iowa, does hereby lease and rent unto Warren Gleason, of Buena Vista county, Iowa, the following described premises, to wit, the property known as the 'Linn Grove Mill Property,' together with the mill and the fixtures thereon and the privileges and appurtenances thereto belonging; to hold for a term of ten years, commencing on the 24th day of June, 1890; to be used for the purpose of milling. The said lessees agree to hire and rent the said premises and pay for the same as follows: Two hundred and fifty dollars a year after date, and two hundred and fifty dollars annually thereafter during the continuance of this lease; and as a further consideration for the use of said property the said lessees agree to repair said mill, and put the same in good condition for manufacturing flour and feed of the best quality, within one year of date hereof, and to keep the dam and fixtures in good condition, and to keep the said mill running during a reasonable portion of the time for the accommodation of the public. The said lessees further covenant with the said lessor that, * * * should they fail to perform any act agreed to be performed, or if at any time they shall cause or suffer any loss to any of the buildings or other property belonging to the said lessor, through negligence or by their failing to keep the same in good order, or by their failing to do their work in a good and workmanlike manner, then they authorize

the said lessor, at his option, to take possession of the above-described property, and declare this lease at an end, * * * and that they will surrender peaceable possession of the said premises in as good condition as the same are now, or may be at any time placed by said lessor, the usual wear and decay alone excepted. * * * It is also agreed that, should owner or lessor of said premises herein described sell or dispose of same prior to the expiration of this lease, the lessees will surrender and release all their right, title, and interest acquired under this instrument upon sixty days' notice and the payment to them, their heirs or legal representatives, the true value of any machinery or improvements then being upon said premises belonging to them, or with the privilege to remove the same therefrom."

At the date of this lease the mill building was in a worn and dilapidated condition, and the machinery and fixtures of an antiquated pattern. Taking possession under their lease, Gleason and Sitz proceeded to put the mill in repair, and placed therein new machinery to a value of $3,000 to $4,000. A year or two later Sitz sold his interest in the property to Gleason, who continued therein until near the expiration of the term of the lease and after the commencement of the partition proceedings. Plaintiff made Gleason a defendant in said proceedings, alleging that the machinery and improvements placed upon the premises by the lessees were not removable by them, and asking that they be enjoined from attempting such removal. Before any injunction was issued, Gleason did remove most of the machinery which had been placed in the mill by himself and Sitz, and stored it in a building belonging to Ward. Plaintiff, by supplemental petition, charges this act as waste, and alleges that it was committed pursuant to a conspiracy between Gleason and Ward, and asks to have her damages made a lien upon Ward's

interest in the property.   She also claims an accounting
for the rents accrued after the date of the decree in the
former action.

The contention of the defendant Gleason, acquiesced
in by Ward, is that by a proper construction of the lease
the title to the machinery, with the right to remove the
same during the term, remained in the lessees, and that,
if such be not its import, then it fails to express the true
meaning of the agreement between the parties, and should
be reformed accordingly.   The district court found for plain-
tiff that Ward was indebted to her in the sum of $461.98.
for rents accrued since the decree in the former action, and
that the machinery and improvements were not rightfully
removable by the tenant, who was enjoined from further
interference therewith.   It was also adjudged that the
property had been injured by the removal of the ma-
chinery, that Ward was equally responsible with Gleason
therefor, and that plaintifl's damages in the sum of $150
be also made a lien on Ward's interest in the common
property.

I.   In the opinion of a majority of the court, the con-
struction of the written lease as contended for by the
plaintiff is correct, and that, if the contract, as thus made,
is to be enforced, the machinery and fixtures
1. CONSTRUC-
TION of lease:
right to re-
move fixtures. placed in the mill by the lessees must be treated
as the property of the lessor.   This conclu-
sion would be decisive of the main points of controversy
in the case but for the further contention of the defend-
ants that the written instrument under such construction
fails to embody or represent the agreement of the parties,
and should be so reformed as to permit the removal by the
tenants of said property as trade fixtures.

II.   Gleason, Sitz, and Ward are the only witnesses
having personal knowledge of the negotiations leading up
to the lease.   Gleason is, of course, interested in securing
such reformation, but, so far as the record discloses, Sitz.

has no interest whatever in the result of the suit, while

2. REFORMA-  Ward's interest is presumably in the success
TION of lease. of plaintiff.    All these men agree in the
statement that it was the mutual understanding and agree-
ment that the new machinery and trade fixtures put in
the mill by the lessees should be removable by them at
the end of the term, and that the writing was executed by
them in the belief that such was to be the legal effect.    To
find otherwise is to say that these three men have com-
mitted conscious and willful perjury.    If they tell the
truth (and we think we are bound to believe them), and
the writing is to be so interpreted as to defeat their purpose
and understanding at the time, it should be reformed.
The mere fact that the writing was read over to and un-
derstood by the parties at the time they signed it is not
controlling against such a claim.    If the language, even
though it be that selected by the parties, when given a
legal construction, fails to express or defeats their mutual
intent and agreement, equity will reform it.    *Stafford v.
Fetters*, 55 Iowa, 484; *Reed v. Root*, 59 Iowa, 359; *Turpin
v. Gresham*, 106 Iowa, 187; *Jamison v. Ins. Co.*, 85 Iowa
229; *Green Bay Co. v. Hewitt*, 62 Wis. 316 (21 N. W. Rep.
216, 22 N. W. Rep. 588).

To justify a reformation, the mistake must, of course,
be clearly and satisfactorily shown; but it is difficult to
conceive how it can ever be more clearly established than
by the concurrent testimony of every witness having any
knowledge of the facts, supported, as we have seen, by the
practical construction given the contract by all the parties
thereto over a long period of years.    It is urged that the
testimony tends to show that the rent of the mill was
worth $500 or more per year, and that the claim of the
lessees is therefore improbable.    True, some of the wit-
nesses so estimate the value of the rent, while others place
it at $250; but it must be borne in mind that all these

estimates are based upon the mill property as repaired by the lessees with the machinery placed therein by them; while the testimony tends to shows that in the condition in which it was received by them the property was practically without any rental value. In the absence of a clear expression to that effect, it is hardly reasonable to conclude that the lessees intended to pay a rent based not alone upon the improved power, but upon the machinery added by themselves to the mill, and at the same time transfer the ownership of the machinery to the lessor. Is it not more reasonable to say that these parties, the lessor with an unproductive water power and building, and the lessees with the unproductive mill machinery, sought, by means of this lease, to put both to a valuable use? By this device the lessor secured the repair of the mill and the maintenance of the buildings and dam and a yearly return of $250 for property which otherwise was without rental value, while the lessees were enabled to meet this outlay by the opportunity thus afforded for employment for their machinery and personal skill. This result works no wrong to the plaintiff. She made her contract to purchase the mill in its original condition. She has contributed nothing to its improvement, but has already received substantial profits from the improvements made by others, and now receives the property as she purchased it, with everything since placed thereon in the way of repairs. There is no legal or equitable reason for giving her the machinery used by the lessees in operating the mill unless there be some valid contract or agreement vesting such right in her; and we find none.

It follows that the decree of the district court must be modified by vacating so much of the decree of the district court as finds the plaintiff entitled to any interest in the machinery placed in the mill by the lessees, and enjoins defendants from interference therewith; also by vacating and setting aside the finding of damages in plain-

tiff's favor for alleged waste in removing such machinery. In all other respects the decree of the district court is affirmed, with leave to appellants to apply in the district court for a retaxation of the costs there accrued. Costs of this court to be taxed to appellee.—MODIFIED and AFFIRMED.