SARAH S. (MORES) PYNE, Appellant, v. W. R. KNIGHT and LEOPOLD LEVY, Appellees.

**Reformation of instruments:** MISTAKE: EVIDENCE. To reform an
1 instrument on the ground of mistake, the mistake must have been mutual or the result of fraud on the part of the party not mistaken, the evidence of mistake clear and satisfactory, and the party seeking reformation free from negligence.
Evidence held sufficient to justify reformation.

**Same:** PURCHASER'S KNOWLEDGE OF MISTAKE. Although one partner
2 who conducted the transaction had no knowledge of a mistake in the description of land purchased for and conveyed to the partnership, yet he was chargable with the other partner's knowledge of that fact so that the vendor was entitled to have the conveyance reformed.

**Negligence of grantor.** The act of a grantor in signing a deed, presented to her by her agents employed to sell the property, without discovering that it conveyed more land than she intended to sell, was, under the record, not such negligence as to preclude a reformation of the instrument.

*Appeal from Bremer District Court.*— HON. CLIFFORD P. SMITH, Judge.

.FRIDAY, MARCH 9, 1906.

SUIT in equity for the correction and reformation of a deed upon the ground of mutual mistake. Defendant's answer was practically a general denial. Decree dismissing plaintiff's petition, and she appeals.— *Reversed.*

*Sager & Sweet,* for appellant.

*Gibson & Dawson and Mitchell & Mattison,* for appellees.

DEEMER, J.— Prior to the execution of the deed which is sought to be reformed, plaintiff, the widow of Wm. H. Mores, deceased, was the owner of various pieces of property in the city of Waverly, including what is known as " Lot 2," the property which it is claimed was included in the deed which she seeks to have reformed for mutual mistake. Mitchell and Mattison were by plaintiff appointed agents for the sale of her property as well as some other matters. They were, it is claimed, instructed not to sell that part of lot 2 upon which the barn stood, as she desired to retain it as a part of her homestead, which was adjacent thereto. Defendants Knight and Levy were partners in the manufacture of brick, and desiring a new location they opened negotiations with plaintiff's agent looking to the purchase of a new site for their works. These were first conducted with defendant Levy, who went upon the property, and plaintiff's agent pointed out the property which she desired

to sell, excluding the barn and the strip of land in controversy. It is claimed that these negotiations were abandoned, and that Knight then took the matter up, and finally purchased the property. A deed was executed to Knight and Levy, Knight paying the money therefor; and it is claimed that Knight thereafter sold an interest in the property to Levy taking his check for one-half the purchase price.

It is claimed by plaintiff that her agents who conducted the negotiations and who drew the deed did not know that the barn was upon and the strip to be reserved was a part of lot 2; but supposing that it was not a part thereof, they described the property in the deed to defendant as lot 2, which covered the barn and the property in dispute. This action is to correct the deed, so that it will not cover the barn or the strip of ground intended to be reserved. There is some dispute, regarding the authority plaintiff conferred upon her agents, and with reference to most of the material matters in controversy.

Defendants contend that the purchase of the property was made by Knight, that Levy abandoned all his negotiations therefor, and that thereafter Knight sold an interest in the property to Levy, who had no knowledge of the claimed mistake in the deed. They also contend that Knight had no knowledge of any reservations; that he purchased the whole of lot 2, and that as to him there was no mistake. They also claim that plaintiff was negligent in signing the deed; that she was fully informed as to its contents, and knew that it covered lot 2 when she signed it.

The law of the case is well settled. To justify reformation there must have been a mutual mistake, or mistake on the part of one party coupled with fraud on the part of the other; and the evidence showing this 1. REFORMATION OF INSTRU- MENTS: mis- take: evidence. mistake must be clear, satisfactory and free from reasonable doubt. The party asking reformation must also be free from negligence. It is likewise the rule that notice to one purchaser is not notice to others

who become tenants in common with him, even though they become such by one and the same purchase. *Parker v. Kane,* 4 Wis. 17 (65 Am. Dec. 283).

With these rules in mind we now go to the record for the facts. Plaintiff's homestead laid immediately south of her barn, which barn, as we have said, was upon lot 2. East of her homestead is what is known as Court street, and west of it Harmon street, both terminating at the south line of lot 2; that is to say they run no farther north than the south line of lot 2. South of the homestead is an alley. The strip upon which the barn is situated, and which it is claimed was erroneously included in the deed is .90 chains deep north and south and 3.90 chains long on the north line, and 5.69 chains on the south. At the time in question the north line was marked by a fence. This strip did not extend entirely over Harmon street, but did seem to cover the north end of Court street. There was no fence between the homestead and this strip of ground, at the time material to our inquiry, and the barn when occupied at all was used in common with the homestead. Plaintiff says that she directed her agents to sell only that part of lot 2 north of the fence above described; that she did not know the lines of lot 2, but told them to sell only that part of the property lying north of the barn; that when the deed was presented to her for signature she did not know that it included the strip in question — the deed on its face including all of lot 2 — and that she did not intend to convey it; that she relied upon her agents making the deed so as to cover only the property she had intended to convey; and that she was informed of the mistake only a few weeks before she brought her suit.

The record leaves no doubt in our minds that neither plaintiff nor her agents intended to convey the strip of land in dispute; and that so far as these parties are concerned, the inclusion thereof in the deed was by mistake and oversight. There is also no doubt that had Levy bought the

property directly he did not intend to, nor did he think that he was purchasing that part in dispute. He was shown the south line of what was supposed to be lot 2, which did not include the part upon which the barn was situated, and never supposed he was purchasing the strip in controversy. These matters are so well established as to leave no room for doubt. But defendants rely upon the proposition that so far as Knight is concerned, he knew the true line between lot two and plaintiff's homestead, and that he believed he was purchasing the whole of lot 2, and that as to him there was no mistake. Under the evidence we must find that Levy abandoned his negotiations for the property, and that Knight then took them up with plaintiff's agent without any actual knowledge so far as shown of Levy's information upon the subject-matter of the sale, although when Knight took up the negotiations with plaintiff's agents while nothing was said regarding the boundaries of the lot, the property was spoken of simply as "the property," Knight saying that he supposed it meant all of lot 2, for he had seen that lot advertised in the newspapers as in the agents' hands for sale. Plaintiff's agents understood he was speaking of the property they had theretofore been trying to sell to his partner, Levy. After agreeing upon the price which was $400, Knight made out his personal check for that amount and delivered it to plaintiff's agents; but before the deed was made Levy proposed to take one-half of the property, and the deed was thereupon made out to Knight & Levy. The deed was delivered to Levy who kept it down to the time of trial; and the check was cashed. Knight says that he would not have purchased the property had he known that the strip in question was intended to be excluded; that it was worthless to him without it; and that he never heard of any intention to exclude or reserve any part of lot 2.

Some time after the sale, one of plaintiff's agents went to defendant Knight wanting to buy a piece of the property so as to get the barn off, saying that they were not familiar

with the lot lines, and had included the strip in dispute through mistake. Knight said that he made no mistake, that he knew where the lot lines were and refused to sell any part of the lot. Some of defendants' machinery was located upon the strip in dispute, and still remains there. Knight also said that the brick business of the firm was what gave them the idea of buying the property. Levy very frankly said that before the deal was finally consummated, he asked Knight if he could get a part of the property, and was told by him (Knight) that he could have part of it, and that he then turned and wrote out a check for $200, which he gave to Knight, and that Knight then said to plaintiff's agents, "make out the deed to W. R. Knight and Leop. Levy." This is practically the entire record in the case save that there is a dispute over the fact as to whether plaintiff knew when she made the deed that the strip in controversy was a part of lot 2. The description in the deed which was drawn by plaintiff's agents was taken from a tax receipt then in their possession, but it was read over to plaintiff before she signed it. There is also a dispute as to the value of the property in controversy including the barn, but the preponderance of the testimony shows that the strip alone without the barn is worth about $450. The purchase price of the entire lot, if defendants purchased so much, was about $400. Unless then there be some technical rule forbidding it the case is clearly one which calls for some sort of equitable relief.

Regarding the transaction as between plaintiff and Knight alone we should have some difficulty in finding the mutual mistake necessary to be shown to justify reformation. But we feel justified under the showing made in bringing Levy into the case and in treating his information as binding not only upon him, but upon Knight as well. The property was intended for the use of the firm of Knight & Levy in their partnership business. It was evidently acquired for that

2. SAME: purchaser's knowledge of mistake.

purpose and was afterward so used. Levy was first approached about the matter, and he undertook to buy the land for the use of his firm. He knew just what plaintiff proposed to sell, and did not negotiate for the strip in controversy. These negotiations were abandoned for some reason, and his partner, Knight, took them up. Knight did not personally know just what plaintiff proposed to sell, but supposed he was buying as he says all of lot 2. He was buying the property for the partnership; however, and it was used by it after title had been acquired. Even if he were buying for himself, and as a speculation he took Levy into the venture before the deed was made out, and his purchase was immediately converted into a partnership matter. This being true Levy's knowledge immediately came into the case, not only so far as his interest is concerned, but also by reason of his agency for the firm. His knowledge became that of the firm and of the individual members thereof. If defendants were simply tenants in common this would not be true. But they were more than this; they were partners. And while as a partnership they perhaps could not take title to real estate, and were legally speaking tenants in common so far as the title is concerned, the property became partnership property just as soon as they agreed to take it together.

In no event should Levy be treated as an innocent purchaser; and the deed as to him should be reformed, unless it be that Knight took title to the whole tract in such a way 3. Negligence   that no reformation could be had as against of grantor.   him. But he did not take such title and as we have seen Knight himself is chargeable with all the knowledge Levy had because he took title under a deed which practically conveyed the property to the partnership. Equity looks beyond all forms and to the real substance of things. It found place in our system of jurisprudence in order that suitors might be relieved from the harsh rules of the common law, and the eye of a chancellor is not to be blinded by subterfuges or contrivances which might avail at

law.  With this in mind we have no doubt that reformation should be made of the deed unless it be for plaintiff's alleged negligence in signing the same with the description as it appears.  Of course plaintiff knew the reading of the description in the deed, but it does not sufficiently appear that she knew this description covered the property in dispute.  She had never so far as shown seen the plat, and on account of the arrangement of the fences may well have thought that the property in dispute was not a part of lot 2.  But in any event she had the right in the absence of some evidence to the contrary to believe that her agent had correctly described the property so as to make it include only that which she desired and intended to sell.  The deed was presented to her by her own agents upon whom she had a right to rely, and in signing it as presented, she was guilty of no such negligence as to deprive her of equitable relief on the ground of mistake.  The case is not ruled by *McCormack v. Molburg,* 43 Iowa, 561, and other like cases. It is more like *Stillman v. Rosenberg,* 111 Iowa, 376; *Jamison v. Ins. Co.,* 85 Iowa, 229; *Brown v. Ward,* 119 Iowa, 604, and that line of authorities.

The trial court should, in our opinion, have reformed the deed as prayed, and the cause will be reversed and remanded for a decree in harmony with this opinion.

*Reversed* and *remanded.*