IN RE ESTATE OF RUDOLPH M. PATTERSON.

J. H. PATTERSON, Administrator, Appellee, v. J. O. PATTERSON, Appellant.

**REFORMATION OF INSTRUMENTS:** Mutual Mistake—Negligence.
1 A contract may be reformed to correct a clearly established *mutual* mistake, even though the party praying for the reformation was guilty of a measure of negligence in signing the contract without reading it.

**REFORMATION OF INSTRUMENTS:** Mutual Mistake—Absence of
2 Parties. On hearing on the final report of an administrator, the court may, on proper prayer and proof by the administrator, *and in order to sustain the report,* reform an instrument against one who is a signer of the instrument, and who is the sole objector to the report, even though the other signers of the instrument (who were entering no objections) were not direct parties to the reformation.

Headnote 1: 34 Cyc. p. 950. Headnote 2: 34 Cyc. p. 970.

*Appeal from Crawford District Court.*—M. E. HUTCHISON, Judge.

FEBRUARY 10, 1925.

OBJECTIONS to a report by an administrator were, by agreement, tried as in equity. A written agreement by the heirs, providing for the settlement and distribution of the estate, was reformed, on the prayer of the administrator, to fix the amount of the estate by excluding therefrom certain claimed indebtedness of the heirs, and the report was approved. The objector appeals. —*Affirmed.*

*Omar E. Robinson* and *W. E. Kahler,* for appellant.

*Sims & Page,* for appellee.

VERMILION, J.—This appeal is from an order approving the report of an administrator and overruling certain objections

thereto. By agreement of the parties, the cause was tried as an equitable matter.

Certain facts are not in dispute. Rudolph M. Patterson, the deceased, at the time of his death was survived by five brothers, his only heirs: J. H. Patterson, the administrator, residing in Denison; J. O. Patterson, who filed the instant objections, and R. C. Patterson, who both lived in Kansas City; M. I. Patterson, of Hagerstown, Maryland; and D. C. Patterson, of Omaha. The deceased left a last will, which was filed for pro-. bate in Crawford County, by which J. H. Patterson was given a greater proportion of the estate than the other brothers. · J. O. Patterson and R. C. Patterson filed objections to the probate of the will. The admitted estate consisted of $50,000 of United States bonds, and an item of $537.06 owed by J. O. Patterson. The latter item is not in controversy here.

1. REFORMATION OF INSTRU-MENTS: mu-tual mistake: negligence.

With the contest over the will pending, there were various conferences between the brothers or their representatives, looking to a settlement of the contest and an agreed division and distribution of the estate, with the result that a written agreement was signed by the five surviving brothers, which, after reciting the filing of the will and objections to its probate, provided that the will should be set aside, and J. H. Patterson should be appointed administrator, and:

"That certain securities and bonds of said estate held jointly by Kuehnle & Voss, agents of the Fidelity & Deposit Company of Maryland and the branch office of said Fidelity & Deposit Company at Kansas City, Missouri, and J. H. Patterson, trustee of deceased, shall be forthwith delivered to the said J. H. Patterson as administrator of said estate to be by him as such administrator kept for settlement and distribution of said estate as hereinafter provided."

The agreement further provided for the partial distribution of four fifths of the estate, on the execution of bonds by the heirs to protect the administrator against claims.

It is conceded that the securities and bonds referred to in the agreement were government bonds, of the face value of $50,000. The report of the administrator, to which objection

was made, as approved by the court below, accounted only for the $50,000 and the other item mentioned.

It was the claim of the appellant that J. H. Patterson, the administrator, was indebted to the estate in the amount of $13,200 in addition, for which he failed to account. The contention of the administrator was that this claim, as well as various other transactions between the deceased and certain of the other brothers, was taken into account and settled in the written agreement by which the will was set aside and the estate divided equally between the heirs at law, and that it was the intention that the agreement should have expressed this, and that the clause of the agreement quoted above should have read as follows: ''That certain securities and bonds now constituting said estate and held jointly,'' etc. He alleged that, by inadvertence, mistake, and oversight, the words ''now constituting said estate'' were omitted from the agreement; and he asked that the agreement be reformed by their insertion. The lower court granted the relief asked, and, with the agreement so reformed, approved the administrator's report, accounting for an estate of but $50,000, with some additions and corrections not now in question.

The controversy here is over the reformation of the agreement, and the refusal of the court to require the administrator to account for anything in excess of the $50,000 of government bonds.

The negotiations preceding the signing of the agreement were carried on personally between J. H. Patterson and his attorney, on the one hand, and D. C. Patterson and J. R. Meyers, an attorney representing the other three brothers, on the other, and by correspondence between the attorneys. The first conference resulted in a document written by Meyers, in form an acceptance of a proposition from the others, with conditions—in reality a proposition from J. H. Patterson—that the other four would each sell their interest in the estate to J. H. Patterson for one fifth of the $49,900 government bonds and the item of $537.06, the others to each pay one fifth of any claims allowed. On this proposal D. C. Patterson wrote and signed a statement as follows: ''The above proposition is entirely satisfactory to me.''

It would seem that at that time it was thought by all parties that the government bonds amounted to only $49,900. Concerning this proposition, Meyers wrote J. H. Patterson from Kansas City: "The proposal I brought back with me is acceptable to your brothers here." Some question arose between the attorneys as to how best to dispose of the will, and as to indemnity bonds to be given the administrator by the heirs on a partial distribution. These questions were discussed by correspondence. A draft of a proposed agreement was prepared by Mr. Sims, attorney for J. H. Patterson, and sent to Meyers at Kansas City. Meyers prepared another draft which he sent to Sims, inclosed in a letter, in which he said:

"At the request of the brothers here I am enclosing you draft of agreement conforming to the opinions of the attorneys they have been consulting."

The letter refers to the possible effect of probating the will, and discusses the bonds proposed to be given by the heirs. The draft inclosed in this letter recited: "That the certain securities and bonds now constituting said estate and held jointly * * *." Concerning this draft, Sims wrote Meyers:

"The agreement outlined in the enclosed copy is entirely satisfactory with one exception, and that is you omitted to include in it any provisions contained in paragraph numbered five of the contract that I sent you some weeks ago for indemnity back to J. H. Patterson executor as against possible claims to be filed and established against the estate."

Thereafter, Meyers came to Denison with another draft of the proposed agreement, which was signed by all the brothers, R. C. Patterson signing as attorney in fact for M. I. Patterson.

The circumstances of the execution of this agreement by J. H. Patterson, as testified to by himself and by Mr. Sims and another witness in somewhat less detail, were that Sims asked Meyers if the contract was the same as the one prepared by Sims; and that Meyers replied that it was, except the clause on the second page respecting the indemnity bonds; and that thereupon, J. H. Patterson signed it. Meyers testified that he did not remember such a conversation. He testified, however, that the draft of the agreement sent him by Sims contained the words, "now constituting said estate;" that he did not know

how those words were left out of the draft that was signed: that he did not think he had that in mind in writing it. When asked by the court if he left the phrase out intentionally, he replied:

"I didn't consider it, one way or another. I didn't consider it at all. I didn't have in mind that there was any material change at all."

Further questions by the court and his answers were as follows:

"Q. When you were here in Mr. Sims' office, it was your understanding that there hadn't been any change except the adding of that paragraph to which Mr. Sims called your attention in a letter? A. That is what I had in mind; that the contract was drawn according to our letters back and forth. Q. I thought perhaps that was true because of something that occurred here the other night, when you were insisting that there was not any change excepting that. A. I hadn't noticed the error. Q. Then it would be entirely possible that you did tell Mr. Sims there were no particular changes? A. Yes, sir, possibly there was nothing. Q. What I wanted to know was whether you designedly,—not wrongfully, but designedly,—left that out of the contract. A. I did not."

We think it is quite satisfactorily and conclusively shown that the only proposition under consideration or discussion by the parties from the time of the Omaha conference related to an estate consisting only of the government bonds and the item owed by J. O. Patterson. The written proposal, the correspondence, and the drafts of the agreement so show. J. O. Patterson, as a witness in his own behalf, does not claim anything to the contrary. We have set out the testimony of Meyers, the only other witness called by him, from which it conclusively appears that, in drafting the agreement signed by the parties, he had no intention to provide otherwise. All parties accepted a distribution of $40,000 as complying with the stipulation that four fifths of the estate should be at once distributed. It is clearly a case where, through a mutual mistake, the written instrument signed does not embody the actual agreement of the parties. That equity will grant relief in such a situation is elementary. *Stafford v. Fetters*, 55 Iowa 484; *Hausbrandt v. Hofler*, 117 Iowa

103; *Brown v. Ward,* 119 Iowa 604; *Coleman v. Coleman,* 153 Iowa 543; *Hyde Park Inv. Co. v. Glenwood Coal Co.,* 170 Iowa 593.

It is urged, however, that J. H. Patterson was guilty of such negligence in signing the agreement without reading it as to require that his prayer for a reformation of the instrument must be denied. It is frequently said that one who has the opportunity to inform himself of the contents of a written instrument by reading it or having it read to him, and is not prevented from so doing by the fraud of the other party, but signs it in ignorance of its contents, is guilty of such negligence as will prevent a reformation of the instrument at his suit. The rule finds proper application in many cases. But where the actual contract and intention of the parties are clearly established, and it is so shown that the writing fails, because of a mutual mistake of the parties in drafting it, to express the true contract, the parties are both negligent, and it is immaterial whether their negligence resulted from the failure of one or both to read the contract. *Merriam v. Leeper,* 192 Iowa 587. See, also, *Welch v. Johnson,* 93 Ore. 591 (183 Pac. 776); *Cox v. Hall,* 54 Mont. 154 (168 Pac. 519).

It is further contended that there can be no reformation in the absence of the other parties to the agreement, R. C., M. I., and D. C. Patterson. The present controversy arises over the report of the administrator accounting for the estate contemplated by the agreement as it would be if reformed. To this report J. O. Patterson alone filed objection, predicated on the agreement as written. The administrator, to sustain his report, asked the reformation of the agreement. The ultimate question is whether the report of the administrator accounting for an estate of only $50,000 should be approved. The other heirs and parties to the agreement are making no objection to the report. We see no valid reason why the report, as finally settled and approved by the court, was not properly approved, so far as they were concerned, nor why, in this situation, the agreement may not, to that end, be reformed, as against the only party objecting to the report. The effect, if any, of such a decree upon the rights of the other heirs and signers of the agreement, who are

2. Reformation of instruments: mutual mistake; absence of parties.

making no objections to the report, and are not parties to any issue of reformation, we do not, of course, determine. But we are of the opinion that, on the record here made, and as against J. O. Patterson, the decree reforming the agreement and approving the report was right, and it is—*Affirmed.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.