L. A. ANDREW, Superintendent of Banking, Receiver, Appellant, v. FIRST TRUST & SAVINGS BANK, Defendant.

IN RE CLAIM OF MRS. DAVE SHAPIRO, Appellee.

No. 42147.

OCTOBER 17, 1933.

Griffin, Griffin & Griffin, for appellant.

Louis S. Goldberg, for appellee.

ANDERSON, J.—The claimant-appellee, Mrs. Dave Shapiro, filed a claim with L. A. Andrew as receiver of the First Trust & Savings Bank of Sioux City, Iowa, for $2,000, and asks that it be allowed as a preferred claim under the provisions of section 9239-c1 of the 1931 Code. The receiver classified the claim as a depositor's claim. Objections were filed to such classification by the claimant. Testimony was taken before a referee, and the referee reported to the court sustaining the action of the receiver in classifying the claim. Objections were filed by the claimant to this report, and upon hearing thereon, the trial court sustained the objections and exceptions to the referee's report filed by the claimant, and ordered and directed that the claim, which was based upon a cashier's check, should be treated as a draft and paid as a preferred claim, out of the general assets of the bank. From such ruling and order the receiver prosecutes this appeal.

Section 9239-c1 of the 1931 Code is as follows:

"Any draft drawn and issued by any bank or trust company prior to its failure or closing and given in payment of clearings and any money paid in the usual course of business to any bank, or trust company for the purchase of a draft for the bona fide transfer of funds shall be a preferred claim against the assets of the bank or trust company."

The part of this section with which we have to deal on this appeal is,

"and any money paid in the usual course of business to any bank, or trust company for the purchase of a draft for the bona fide transfer of funds shall be a preferred claim against the assets of the bank or trust company."

The facts are in substantial accord: A short time before the closing of the bank, one William Mazie, who is a brother of the claimant and was acting for her, took $2,000 in currency to the bank and told the cashier of the bank that he would like to get a draft for $2,000 on a Kansas City bank, which amount he desired to transfer to his sister, the claimant, in Kansas City, Missouri. The cashier replied that they did not have a Kansas City connection, but that he would fix him out just the same, and the cashier took the money and issued a cashier's check for the amount, made payable to Mrs. Dave Shapiro, and delivered it to Mr. Mazie. Mr. Mazie testified that:

"They (the bank) didn't say that they could not give me a draft on Kansas City. They said they did not have a direct connection with Kansas City. I thought Exhibit E-1 (the cashier's check) was a draft, and didn't know that when a bank issued a draft they draw it against some other bank. I brought this currency into the bank for the purchase of a draft and asked for a draft and thought that the instrument that I received was a draft."

This testimony is not contradicted by the cashier who transacted the business. The cashier testified that Mr. Mazie asked for a draft on Kansas City, and he further testified:

"I wrote a cashier's check and gave it to him. I think he asked me if that would serve the same purpose, and I told him yes. It was my intention that it should serve the same purpose. I don't think I explained to him the difference between a cashier's check and a bank draft, because there actually is none, and I didn't explain the legal difference between the two instruments, as I didn't believe there was any, as a matter of fact. I think he believed that an instrument marked 'cashier's check' is the exact equivalent of a draft, * * * and I said to him for all practical purposes the cashier's check would be the proper instrument for him to take. I intended to give him the equivalent of a draft, as far as I knew. I didn't know there was any legal difference between the two instruments, and that a question might arise in case of the closing of the bank, and thought for all practical purposes the two instruments were just the same."

The cashier further testified that he thought claimant believed that an instrument marked "cashier's check" is the exact equivalent of a draft.

It is the claimant's position, first, that the quoted section 9239-c1 grants a preference, not to the instrument itself, but to the transaction, irrespective of whether a draft or cashier's check or no instrument at all is issued; that a cashier's check being a form of a bank draft, is included within the expressed terms of the quoted section; that the quoted section should be liberally construed; and that it was the intention of the legislature to grant a preference for the money actually paid into the bank for the purpose of the transfer of funds, without regard to the form of the instrument issued by the bank to effect such transfer. An answer to this contention might be that the statute specifically mentions and refers to a "draft" and does not include "cashier's check" or any other form of instrument that might be used for the bona fide transfer of funds. However, in the view we take of appellee's next contention, it is unnecessary for us to determine the question here presented.

The claimant next insists that she is entitled to reformation of the cashier's check to the end that it will conform to the mutual intent of the parties, because of mutual mistake or accident in the selection of the form of instrument.

It is a well-settled rule that to justify a reformation in a court of equity, either upon the ground of mutual mistake, accident, or fraud, the evidence must be clear, satisfactory, and convincing. We have held that:

"It is now well settled in this state that a court of equity will reform a contract even where, through mistake of law, it does not express the true intent of the parties thereto." Bonbright v. Bonbright, 123 Iowa 305, 309, 98 N. W. 784, 785.

See, also, Floberg v. Peterson, 214 Iowa 1364, 242 N. W. 13.

We have also held that equity will grant relief for the purpose of making the legal effect of the instrument correspond to the express intention of the parties as disclosed in their negotiations. Stelpflug v. Wolfe, 127 Iowa 192, 102 N. W. 1130; Kowalke v. Evernham, 210 Iowa 1270, 232 N. W. 670.

In Conner v. Baxter, 124 Iowa 219, 226, 99 N. W. 726, 728, we said:

"Whatever may be the holdings in other jurisdictions, the courts of this state have not hesitated to reform contracts, not only where mistakes of fact are clearly established, but also where by

mistake as to the legal effect of the language employed the real intent of the parties is not expressed."

And we have also held that where the language employed in an instrument, even though it be selected by the parties, fails to express, or defeats, the mutual intention, when given a legal construction, equity will reform it. Brown v. Ward, 119 Iowa 604, 93 N. W. 587; Kanofsky v. Woerderhoff, 211 Iowa 1175, 1179, 235 N. W. 305, 307. In the last-cited case we reviewed the authorities upon this subject and said:

"In this state it is well settled that equity will grant relief for the purpose of making the legal effect of the instrument correspond to the express intention of the parties as disclosed in their negotiations."

In Andrew v. Farmers State Bank, 212 Iowa 1375, 1380, 238 N. W. 425, 427, in referring to the statute in question we said:

"The statute in question contemplates if the money is paid to a bank to buy a draft and it is intended that the draft was to be used by the purchaser for a bona fide transfer of funds, that is sufficient. * * * The law * * * was intended to prefer drafts that were paid for with money and purchased for the bona fide transfer of funds."

There can be no serious contention, under this record, that the purchaser of the instrument in question here (cashier's check) took $2,000 in currency into the bank, told them that he wanted to transfer it to its owner, his sister, in Kansas City, and asked for a draft for that amount. The bank had no correspondent in Kansas City, and issued to him a cashier's check, telling him that was the same thing and would serve the same purpose. The purchaser did not know the difference between a cashier's check and a draft, and was sure that he got a draft, as he had requested. The cashier of the bank, who issued the instrument, believed that the purchaser thought he was obtaining a draft. And the cashier himself was under the belief that there was no practical difference between a cashier's check and a bank draft, and no legal difference between the two instruments. It is apparent that both parties believed that the cashier's check was the exact equivalent of a draft, and that the intent was to purchase and sell a bank draft. This mutual intent was thwarted by the mutual error or mistake in the selection of the

1170

form of the instrument. Under the record and the established rules, the instrument should be reformed and treated as a bank draft in order to effectuate the true intention of the parties as disclosed by their negotiations. The trial court found that the cashier's check involved should be treated as a draft and paid as a preferred claim out of the general assets of the bank. This in effect was a reformation of the instrument, and with this ruling we are satisfied.

Some question is raised by the appellant that a claim of this class should not be preferred as against all the assets of the insolvent bank, but this question has been determined by us adversely to the contention of the appellant in Andrew v. Farmers & Merchants State Bank of Cascade, 215 Iowa 1150, 247 N. W. 797.

It follows, from what we have said, that the instrument should be reformed and treated as a draft, and that it should be allowed as a preferred claim against all the assets of the insolvent bank.—Affirmed.

ALBERT, C. J., and MITCHELL, STEVENS, EVANS, KINDIG, and KINTZINGER, JJ., concur.