RAY B. WALLACE, plaintiff-appellant, v. FLOYD W. SPRAY et ux., appellees, and IDA M. WALLACE, defendant-appellant.

No. 48994

(Reported in 78 N.W. 2d 406)

SEPTEMBER 18, 1956.

REHEARING DENIED NOVEMBER 16, 1956.

Lorna L. Williams, of Des Moines, for appellant.

Watson & Herrick, of Indianola, for appellees.

HAYS, J.—Plaintiff asks that a certain instrument termed an "agreement", Exhibit A in the record, be reformed to speak the real agreement between the parties; and in the alternative, for a partial rescission thereof. Defendant denies that the "agreement" fails to state the true agreement; pleads that plaintiff is estopped to have relief; and, by way of affirmative relief, asks that the court decree the "agreement" to be the true contract and establish it as such. The trial court held plaintiff had failed to establish his claim by clear, satisfactory and convincing proof, and also that he was estopped from the relief demanded. A decree establishing this "agreement" as prayed by defendant and dismissing plaintiff's petition was entered and plaintiff appeals.

The "agreement" deals with a sale of a grocery business, rental of the building in which the business was conducted and an option to purchase the building. We are concerned only with that portion dealing with the option.

The "agreement" called a memorandum of agreement states that plaintiff has sold his business, stock, truck, and fixtures to defendant for $7000, and sets forth generally the terms. It then provides:

"The first party does on this date deliver to the party of the second part immediate possession of said stock and fixtures, and possession of said building and premises; and second party agrees to deliver to the first party a lease in the sum of $50 per month rent, payable on the 21st of each month in advance, and said lease to be for ten years, in accordance to the terms thereof, with the further option that during the tenure of said lease, the second party is hereby given an option to purchase said building and lots * * * for the sum of $7000; and should he exercise said option, then the rent already paid * * * shall be credited on the purchase price, and *the second party shall pay to the first party the insurance and taxes and upkeep paid by him on the premises from this date* (February 21, 1950) *to the date said option is exercised.*" (Italics ours.)

It is with the above italicized portion of the "agreement"

that we are concerned. It is plaintiff's contention that due to a mistake the foregoing failed to express the true agreement of the parties; that following the word "premises" there should be inserted the words *"and interest on the purchase price at six per cent."* This feature of the case presents a fact question.

As to the legal principles governing reformation of instruments, there is no dispute. It is the established rule that one seeking reformation has the burden of establishing his right thereto by clear, satisfactory and convincing proof. Westercamp v. Smith, 239 Iowa 705, 31 N.W.2d 347; Cataldo v. Compiano, 247 Iowa 999, 76 N.W.2d 214. This is required to safeguard the courts from making contracts for the parties, rather than making the written instrument, which is the subject of controversy, speak the true contract. This and this only is the equitable relief afforded by a reformation.

In Betz v. Swanson, 200 Iowa 824, 826, 205 N.W. 507, 509, it is said: "* * * equity will reform a written instrument upon the ground of mistake occurring at the time the instrument was prepared, only when such mistake is mutual, * * *. The necessity of mutuality of mistake arises out of the inability of the court to make a contract for the parties. If the mistake is all on one side, then clearly there was no meeting of minds, and therefore no contract." See also Adams v. Iowa Gas & Electric Co., 200 Iowa 782, 203 N.W. 229; 12 C. J. S., Cancellation of Instruments, section 27b(2).

The first prerequisite to plaintiff obtaining reformation of above instrument is the showing by clear and satisfactory proof the existence of a contract between them, a meeting of the minds, as to what should be the terms of the subsequent written agreement. As will be later shown, there is a sharp conflict in the oral testimony of the two litigants. In such a situation the circumstances surrounding them and the relative reasonableness or unreasonableness of their respective versions properly may be considered and often furnish very satisfactory indication as to where the truth lies.

As to many of the facts, we find little conflict. Appellant owned a grocery and market at Indianola and desired to dispose of it as well as the property on which it was located. Fourteen thousand dollars for both was the price asked. Appellee had two

or three conferences with him regarding the purchase thereof. He was advised by his bankers that the purchase of both the business and the premises was too top-heavy, and it was suggested that an effort be made to buy the business and lease the building. A sale price of the business of $7000 and a $50 a month rental for the premises was agreed on. It was also agreed that the lease should contain an option to appellee to purchase the building for $7000 at any time during the lease, with rentals paid to be credited against this $7000 plus the taxes, insurance and upkeep paid during the time by appellant. It is not claimed that the business or the premises was not worth the agreed price of $7000 each; or that $50 per month rental is out of line. The only contention between the parties is whether in addition to insurance, taxes and upkeep appellee was also to pay six per cent interest on the purchase price up to the time the option was exercised. As to this, the testimony is in conflict.

Appellant testified: "Mr. Spray broached the subject of an option. He asked for an option to buy the building. I thought it over. Well, he further said he didn't want to start in business and I would sell the building out from under him. * * * I told him I would give him an option that he was to pay $50 a month rent and that was to be taken out of the purchase price, and I was to take out taxes, insurance and interest. I told him, I says: 'Floyd, I have been good to you. I have let you have this other money at four per cent, but I can't for this term of years expect money at that rate.' I told him it was six per cent. When I told him that, he said he would take the business."

It might be noted that the business was financed by a chattel and real-estate mortgage, which called for four per cent interest. At the time of trial both had been paid in full. He states that at this conversation only the two and his employee, now deceased, were present.

He further testified that in February 1953 appellee came to their home to pay the interest and asked what the taxes and insurance would be and said: "Of course, there will be some interest." Again in July 1953, after he discovered the "agreement" contained no provision for payment of interest, he had a paper drawn up to correct the error and asked appellee to sign

it, which he refused to do; that when reference was made to the interest provision being left out, appellee said he "knowed it had been left out." This statement is not denied.

Mrs. Wallace testified to hearing two conversations between her husband and appellee. She corroborates her husband's statement as to the February 1953 meeting at her home. As to another meeting in July 1953 she states appellee came to pay the rent and discussed the option. Appellee stated: "If I would take it up at the end of ten years I would have only a thousand dollars to pay, counting out these things." Her husband said, "I have another thought coming. I don't figure it that way, counting out taxes, insurance and interest."

Appellee, as a witness, testified that at no time was anything said about interest being charged on the purchase price of the premises; that all of the details of the contract were not discussed before it was actually put in writing. He states that when he received the agreement, notes and mortgages he consulted with his attorney and his bankers: "They advised me to take him up on it." He states that in July 1953, when the option was discussed and appellant was urging him to exercise it, appellant figured the interest at four per cent rather than at six. He again consulted with his bankers about exercising the option, and did not do so.

Mrs. Spray states she was present at some of the conversations between her husband and Mr. Wallace; that taxes and insurance were to be deducted if the option was exercised. She never heard interest mentioned.

As to the writing of the agreement, there is no conflict. J. Berkley Wilson, an attorney at Indianola, Iowa, had represented appellant in other matters. On February 21, 1950, appellant went to Wilson's office to have the necessary papers drawn. He states he told Wilson the various details including the deduction of taxes, insurance, upkeep, and six per cent interest if the option was exercised. Wilson handed the prepared papers to him after his stenographer had typed them; that he signed them, took them home for his wife's signature, and returned all of them to Wilson. Neither read them before they signed. The Sprays obtained the papers after they were signed by the Wallaces. They signed and returned them to Wilson, who placed the mortgages and lease

of record, sent them to Wallace, and put the agreement in his files. Not until in July 1953 did Wallace see the agreement, after having signed it in February 1950.

Wilson, as a witness, stated that Wallace came to his office and gave him the information so he could prepare the papers. He dictated the agreement to a stenographer; that there was a discussion about upkeep, insurance, taxes, and interest, but does not recall any amount of interest. He said: "I just recall there was a discussion about interest being included as one of the deductions—a deduction against the credit of rent on this lease"; that as far as he knew at the time, they were drawn up in accordance with his instructions. It is possible he might have made a mistake.

The foregoing is, we believe, a fair statement of the record.

As before stated, the reasonableness or unreasonableness of the respective versions of the litigants may become the pivotal factor in the ultimate result. Here we have a business clearly worth $7000 and a building wherein the business was conducted worth a rental value of $50 a month. It is conceded that in 1950 the building and premises on which it stood were worth $7000. Under the option granted appellee, appellant was denied the right of selling the premises for a ten-year period, and as owner was responsible for the taxes, insurance and upkeep during that period. Appellee, without obligation to buy, nevertheless had the privilege of buying at any time during the ten-year period for the 1950 value; with rents paid during the occupancy as a tenant credited as payments on the purchase price. Though not discussed, while appellee agrees to reimburse appellant for taxes, insurance and upkeep, if the option is exercised, no mention is made, or claimed, of interest on these amounts. As contended by appellee, and as the agreement now stands, he could be a purchaser of a business worth $7000; a tenant for ten years in a building reasonably worth $50 per month; and by paying the rent, plus $1000, and the taxes, insurance and upkeep, be the owner of properties worth $14,000.

That such was contemplated, discussed and accepted by the parties is so incredible as to be beyond belief. We think the record clearly and satisfactorily shows that appellant's version is

correct; that appellee observed the crucial error in the agreement but remained quiet; and now seeks to, and in the trial court did, affirmatively establish his right to such unjust enrichment. That equity will grant relief by a reformation, see Hyde Park Investment Co. v. Glenwood Coal Co., 170 Iowa 593, 153 N.W. 181; Kowalke v. Evernham, 210 Iowa 1270, 232 N.W. 670; Day v. Dyer, 171 Iowa 437, 152 N.W. 53; Stelpflug v. Wolfe, 127 Iowa 192, 102 N.W. 1130; Andrew v. First Tr. & Sav. Bk., 216 Iowa 1165, 250 N.W. 487; Westercamp v. Smith, 239 Iowa 705, 31 N.W.2d 347; Rodgers v. Cummings, 244 Iowa 116, 56 N.W.2d 12.

 Appellee pleads, and the trial court held, that appellant was estopped by his failure to read the agreement before he signed it. Such is the general rule. Houchin v. Auracher, 194 Iowa 606, 190 N.W. 3; Preston v. Howell, 219 Iowa 230, 257 N.W. 415, 97 A. L. R. 1140; annotation 45 A. L. R. 701. However, such rule has its exceptions. Snyder v. Ives, 42 Iowa 157; Pyne v. Knight, 130 Iowa 113, 106 N.W. 505; Salmon v. Farm Property Mut. Ins. Assn., 168 Iowa 521, 150 N.W. 680; Day v. Dyer, 171 Iowa 437, 152 N.W. 53; In re Estate of Patterson, 199 Iowa 362, 202 N.W. 8; Betz v. Swanson, 200 Iowa 824, 205 N.W. 507; Conrad v. Farmers Mut. Hail Ins. Assn., 223 Iowa 828, 273 N.W. 913.

In Snyder v. Ives, supra, at page 162 of 42 Iowa, it is said: "The law requires only reasonable diligence, and requires this to the end that culpable negligence may not be encouraged."

In Betz v. Swanson, supra, 200 Iowa 824, 827, it is said: "If the clause was inserted in the deed by mistake on the part of appellant or of the scrivener who drew it, then the mistake was mutual, because it was contrary to the real intention and agreement of the parties."

In Pyne v. Knight, supra, 130 Iowa 113, 120, 106 N.W. 505, it is said: "But in any event she had the right in the absence of some evidence to the contrary to believe that her agent had correctly described the property so as to make it include only that which she desired and intended to sell. The deed was presented to her by her own agents upon whom she had a right to rely, and in signing it as presented, she was guilty of no such negligence as to deprive her of equitable relief on the ground of mistake."

We find no negligence, under this record, of such a nature to work an estoppel against appellant. To hold that by the refer-

ence to six per cent interest being omitted from the agreement it is not a part of the contract, notwithstanding the express understanding of the parties to the contrary, would render the power of reformation that is lodged in a court of equity impotent and unavailing.

Equity will not countenance that which in effect would amount to a legal fraud.

The decree of the trial court is reversed and the cause remanded for a decree reforming the agreement, Exhibit A, as prayed by appellant and in conformance herewith.—Reversed.

All JUSTICES concur.