IN RE ESTATE OF B. O. SWEBAKKEN; deceased.

MARIE A. SCHOENTHAL, appellant, v. BERNARD SWEBAKKEN et al., appellees.

No. 50067.

(Reported in 105 N.W.2d 610)

October 18, 1960.

Kintzinger & Kintzinger, of Dubuque, for appellant.

Jacobson & Bristol, of Waukon, for Elmer Fogt, executor of estate of B. O. Swebakken, deceased, appellee.

Floyd S. Pearson, of Decorah, for contestants of claim, appellees.

Peterson, J.—Claimant, Marie A. Schoenthal, was the principal beneficiary and proponent of an instrument offered for probate as the will of B. O. Swebakken, deceased, in the District Court of Allamakee County.

Before the will was probated, his heirs-at-law, and his step-children, who were the principal beneficiaries under a previous will, filed objections to the admission of the will.

Shortly thereafter the attorneys for the contestants and for

Mrs. Schoenthal entered into negotiations for settlement of the contest and of any claims of any of the parties against the estate.

They entered into a written settlement agreement. The will was then admitted to probate.

Sometime thereafter, and within six months after the death of decedent, Mrs. Schoenthal filed a claim in the estate for $4343.27 for services rendered and other charges against decedent.

The administrator of the estate and the contestants filed resistance to the claim, alleging it was settled, and was to be released under the settlement agreement entered into between the parties. It was also alleged that through mistake and inadvertence the attorney who had prepared the agreement had omitted a statement as to release of all claims by all parties. Prayer was filed for reformation of the written contract to include this omitted clause and dismissal of the claim. The case was then transferred to equity for trial.

Upon trial the court reformed the contract, including the omission, and dismissed Mrs. Schoenthal's claim. She has appealed.

 Attorneys for both appellant and appellees are agreed as to the one legal question involved in the case. A court of equity upon clear, satisfactory and convincing proof will reform a written instrument which through mutual mistake has omitted a substantial provision of the verbal understanding upon which it is based. Merle O. Milligan Co. v. Lott, 220 Iowa 1043, 263 N.W. 262; Olsen v. Olsen, 236 Iowa 313, 18 N.W.2d 602; Westercamp v. Smith, 239 Iowa 705, 31 N.W.2d 347; Quinn v. Mutual Benefit Health and Accident Assn., 244 Iowa 6, 55 N.W.2d 546; Miller v. Martin, 246 Iowa 910, 70 N.W.2d 141; Wallace v. Spray, 248 Iowa 100, 78 N.W.2d 406; 76 C. J. S., Reformation of Instruments, section 30.

The meeting to negotiate a settlement was held on March 17, 1957, at the law offices of Hart & Hart. Frank R. Miller was present representing all contestants. Sherman Hart and James Hart represented Mrs. Schoenthal. Two or three other attorneys were present part of the day, but they took no part

in the negotiations. Mrs. Schoenthal was in a private office close by, for consultation with her attorneys when necessary. The evidence discloses as the negotiations proceeded, Hart Brothers were constantly consulting with Mrs. Schoenthal in the private office; they finally came back and announced her agreement. Mr. Miller secured agreement by all his clients within 24 hours. The result of the negotiations was that all claims by any contestants and by Mrs. Schoenthal should be released and waived as a part of the settlement, and Mrs. Schoenthal was to receive 60% of the residue, and all contestants 40%. The estate was worth approximately $90,000. The will contained four specific bequests amounting to $1800.

Appellant contends she did not release or waive her claim and the contract as written should govern. Only three witnesses testified: Mr. Frank R. Miller, and Messrs. James and Sherman Hart.

Mr. Miller testified: "The matter of claim for her services was discussed on March 17, at Mr. Hart's office when the agreement was made. * * * I am absolutely positive that it was explicitly agreed between me and the Harts in the presence of the attorneys only that the claim for services of Mrs. Schoenthal was agreed to be released. * * * That the estate was not to pay on any claims; that was all agreeable to my clients."

Mr. Miller testified further: "Q. As a matter of fact, in settlement cases, isn't it customary in settling cases, and usual to put in a full release of all parties in any agreement you draw? A. Certainly. And that is why I am embarrassed in my overlooking this. I suppose I am not alone; other attorneys overlook matters, too. But I overlooked it."

Mr. Sherman Hart testified: He quoted Miller as saying: " '* * * we are going to settle it, on a percentage, and all parties waive any claims that they might have, or think they have against the estate.' " Then Mr. Hart said: "That was the final conclusion reached between Hart & Hart as attorneys for Mrs. Schoenthal and Miller & Pearson as attorneys for the objectors. When the written stipulation, Exhibit M was finally reduced to writing and signed, the part of the oral agreement about the waiver of claims on both sides was omitted. During the con-

versation in my office between James Hart and myself on the one hand on the settlement problem, *I also had conversations with my own client.*" (Emphasis supplied.)

Mr. James Hart testified: "Q. What was the fact as to whether there was any agreement as to there being a full and complete release of all claims of all character and kind and nature that anyone had against the estate? A. It was agreed upon. At the time my brother and I were negotiating with Mr. Miller and his partner we had authority as attorneys to act on behalf of Mrs. Schoenthal."

▆ As a general statement concerning reformation we quote from 76 C. J. S., supra: "In order to authorize reformation, the instrument must fail to express the parties' agreement or intention, either because of *mutual mistake* or because of mistake, inadvertence, or accident on one side and fraud or inequitable conduct on the other." (Emphasis supplied.)

▆▆ One important matter to be considered in decreeing reformation of a contract is that there was a clear meeting of the minds in the oral agreement when made, prior to placing such agreement in writing. We said in Wallace v. Spray, 248 Iowa 100, 103, 78 N.W.2d 406, 408: "In Betz v. Swanson, 200 Iowa 824, 826, 205 N.W. 507, 509, it is said '* * * equity will reform a written instrument upon the ground of mistake occurring at the time the instrument was prepared, only when such mistake is mutual, * * *. The necessity of mutuality of mistake arises out of the inability of the court to make a contract for the parties. If the mistake is all on one side, then clearly there was no meeting of the minds, and therefore no contract.'"

▆ The evidence in this case meets that test. All attorneys involved in the case so testified. There is no contradiction of their testimony in the record. It is significant that appellant was in court throughout the trial, heard the testimony of the attorneys, and did not take the witness stand to refute such testimony.

Counsel for appellant urges in argument that there is some cloud on the testimony of the attorneys because they had a contingent fee interest in the allowance or disallowance of appellant's claim. The trial court considered all the attorneys

as able, highly reputable and completely truthful members of the Iowa Bar. This court shares in that confidence.

We hold the reformation of the contract was supported by clear, satisfactory and convincing evidence, and dismissal of the claim was justified.

The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur.