BERTHA SCHULTZ, Appellant, v. W. J. LIDTKA et al., Appellees.

**REFORMATION OF INSTRUMENTS:** Evidence—Degree of Proof.

1 Principle recognized that the evidence justifying the reformation of an instrument on the ground of mistake must be clear,

satisfactory and free from reasonable doubt.  Evidence re-·
viewed, and held insufficient to justify reformation of a lease.

**CONTRACTS**:  Requisites and Validity—Inequitableness.  Principle
2  recognized that a contract fully understood by the parties and
free from fraud is binding, though inequitable.

*Appeal from Poweshiek District Court.*—HENRY SILWOLD,
Judge.

TUESDAY, MARCH 13, 1917.

ACTION in equity to reform a written lease, and for general equitable relief.  There was a trial upon the merits, and a decree dismissing plaintiff's petition.  Plaintiff appeals.—*Affirmed.*

*Bray, Shifflett & Wilkie,* for appellant.

*Boyd & Boyd,* for appellees.

PRESTON, J.—1.  By the lease executed in duplicate on October 6, 1913, plaintiff leased to defendants, at an annual cash rental, 80 acres of land, from March 1, 1914, until the death of plaintiff.  And the lease further provided that plaintiff was to have her board and a room in the house on the premises, without charge, until the end of the lease, unless sooner terminated; that defendants were to preserve and keep the fruit and ornamental trees from injury by plowing, or from cattle, horses, sheep, or otherwise; that defendants were not to permit any wilful or voluntary waste, spoil or destruction in or upon said premises.  It further provided that, after March 1, 1920, either party to the agreement might terminate the lease by giving written notice.  Second party further agreed that, if they failed to keep and perform all the covenants; plaintiff might declare the lease void, upon giving 30 days' notice, and could re-enter the premises.

The petition alleges that, contrary to the real contract

entered into, and by oversight on the part of the scrivener, there was omitted from the writing that part of the agreement, as plaintiff alleges, that defendants were to furnish plaintiff a comfortable home; that defendants were to treat plaintiff with kindness; that the defendants were to keep a horse and colt for plaintiff, or buy a driving horse and keep the same for her use; and that defendants were to deliver to plaintiff one half of the young chickens and one half of the eggs produced by the chickens which were owned or kept by plaintiff on the premises. It is then alleged that defendants have failed to comply with the terms of the contract as she claims it to be, and that defendants have committed wilful and voluntary waste by keeping hogs in the horse barn, by permitting hogs to destroy the fruit trees, and by cutting down certain of the shade trees on the premises; that defendants have not treated her kindly, so that she has been compelled to procure board and room for herself elsewhere. The petition also alleges that plaintiff is of German birth and that she is not entirely familiar with the English language, and that she did not understand that the part of the agreement alleged to have been omitted was not in the writing. She further alleges that the consideration expressed in the written lease is inadequate, and that it would be inequitable to continue said contract in force when plaintiff is deprived of her said home, board and care.

Defendants allege that the writing expresses the real contract between the parties, and deny that there was any oversight or mistake; allege that they have complied with their part of the contract; deny allegations as to waste.

No 30 days' notice has ever been given by plaintiff, as provided in the contract. Plaintiff is 63 years of age, but has been in America 61 years. The questions presented are almost entirely of fact.

It should have been stated that plaintiff claims that the principal consideration for the lease was the part alleged to have been omitted. The prayer of the petition also asked that the lease be canceled, and the argument on this last proposition is that, if appellees failed to perform their part of the contract, plaintiff had the right to declare the lease void. But this was upon giving notice, which was not given.

There are some minor matters present-
1. REFORMATION OF INSTRU-MENTS: evi-dence: degree of proof. ed, but the principal point in the case is whether the evidence was sufficient to war-rant a reformation of the lease. The de-fendants allege and testify that the lease as drawn ex-presses the real agreement made between the parties. Ap-pellant does not dispute appellees' legal propositions, that the evidence to justify a reformation must be clear, satis-factory and free from a reasonable doubt, and that there must be a mutual mistake, or such a mistake in the draft-ing of the writing as that it does not express the meaning or intent of the parties. Appellees cite, among other cases, *Pyne v. Knight,* 130 Iowa 115; *Day v. Dyer,* 171 Iowa 437, at 450; *Breja v. Pryne,* 94 Iowa 755, 757.

The testimony to sustain plaintiff's contention as to the reformation of the lease is that of plaintiff alone, or sub-stantially so. This is denied by both defendants. It ap-pears that the parties had talked over the provisions of the lease at their home in the country, and went to an attorney in Grinnell to reduce the agreement to writing. The at-torney who drew the lease, who is not an attorney for either party in this case, and who appears to be disinter-ested, testifies that, after the contract was prepared, it was read over to the parties and explained to them, and he thinks plaintiff understood its provisions. And plaintiff, on cross-examination, says in part:

"This contract was drawn by Mr. Patton after all

these matters had been fully talked over and discussed. It was signed after Mr. Patton read and explained it," etc.

2. CONTRACTS: requisites and validity: inequitableness. There may be some minor circumstances for one side or the other which we have not noticed, but the record has been read, and we agree with the conclusion of the trial court that plaintiff did not make out a case for reformation. This being so, she would not be entitled to some of the relief asked, which depends upon a reformation of the contract. Even though plaintiff now claims that the contract is inequitable, if it was read over to her and understood by her, and there is no fraud, she is bound by its terms. *Rensink v. Wiggers,* 99 Iowa 39, 42.

It should have been said in regard to the alleged agreement that defendants were to keep a horse and colt for plaintiff. The attorney testifies that the reason this was not included in the contract is that the parties themselves did not come to any definite understanding as to just what kind of an animal should be described in the contract; that there was something said about this, but that plaintiff did not know just which animal she wanted to keep. It appears from the testimony, however, that the defendants did keep a horse for plaintiff until she sold it.

There appears to have been some ill will towards the defendants on the part of the plaintiff, growing out of the fact that, in March, 1915, four daughters and one son of the plaintiff instituted guardianship proceedings against her, on the ground that she was habitually addicted to the excessive use of intoxicating liquors, and a trial was had thereon. In this case, one son and a daughter have taken sides with the mother, and the other daughters on the side of defendants. Unfortunately, plaintiff was not happy when living with defendants, and defendants may be somewhat to blame in some respects; yet plaintiff seems to have an unhappy disposition.

2.   The other matters complained of, we deem of minor importance, and appellant seems to have so treated them in argument.   We think the evidence does not sustain plaintiff's contention that defendants committed damage and waste on the premises.   As to the hogs in the orchard and barn, plaintiff testifies that she saw the pigs in the orchard only once; "that defendant kept about 30 pigs in the horse barn; that there was nothing in the agreement that prohibited them being there; they scratched the sills with their feet, and rooted up the bricks and a board floor; and made manure that lay on the floor until late in the summer."   As to the cutting of the maple trees and willows, it appears from plaintiff's testimony that, the first year defendants were on the place, they built a new fence along the road, and in doing so cut down some of the trees.   It is not shown by the evidence that plaintiff made any objection to this, and the testimony of one of the defendants is that he cut the trees at the express direction of plaintiff.   Some willows were cut on another part of the farm where a string of tile had been laid through them, and the willows were cut to prevent them from stopping up the tile.   Several witnesses testified that the effect of tiling close to willow trees is to choke up the tile, and that it was a benefit to the farm to cut the willows.   One of the defendants testifies that these trees "looked like they had grown out of stumps, thick bushes;" that he cut three or four rods of them by Mrs. Schultz's direction, where the tile runs through.

We have not attempted to set out the evidence in full. It is not our practice to do so in fact cases.   But, taking the record all together, we are satisfied that the plaintiff did not make out a case for reformation or forfeiture of the lease on account of waste or damage, and that the trial court properly decided the case.

The decree of the district court is, therefore,—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.