BRENUS WESTERCAMP, Appellee, v. A. D. (ART) SMITH et ux.,
Appellants.

No. 47190.

(Reported in 31 N. W. 2d 347)

MARCH 9, 1948.

REHEARING DENIED MAY 7, 1948.

Palmer & Spencer and Ned P.. Gilbert, all of Oskaloosa, for defendants-appellants.

Bray,. Carson & McCoy and Lake M. Crookham, all of Oskaloosa, for plaintiff-appellee.

MANTZ, J.—The action is in equity. Plaintiff, Brenus Westercamp, prays for specific. performance· of a certain real estate contract entered into· on January 10, 1940, wherein defendant A. D. (Art) Smith, as grantor, agreed to sell to· plaintiff, as grantee, a certain one-hundred-ten-acre farm situated in Mahaska County, Iowa. Plaintiff alleged compliance with the terms of said contract and that defendant refused to comply therewith by executing to plaintiff the proper conveyances thereto. Said defendant, his wife, Cordelia J. M. Smith, joining him filed answer controverting plaintiff's petition and at the same time filed a. cross-petition wherein it was alleged that plaintiff had failed and neglected to comply with the terms of the contract, alleging that same had been forfeited and canceled. They also prayed that their title to the real estate be quieted; that the contract be reformed, that the contract be

declared abandoned by the plaintiff, and for general equitable relief. By appropriate pleadings plaintiff controverted the material allegations of the answer and cross-petition of defendants.

The trial court found for the plaintiff, ordered specific performance of the contract according to its terms and denied the askings of defendants in their cross-petition. Defendants have appealed.

I. There is no dispute that the parties on said date entered into a written contract wherein Smith as owner agreed to sell to Westercamp the one hundred ten acres of land in controversy and described in plaintiff's petition. While Cordelia J. M. Smith, wife of the grantor, did not join in the contract, still no question is raised as to her not doing so. Both Cordelia J. M. Smith and A. D. (Art) Smith will be referred to as appellants in this opinion.

In order that we may have a better understanding of the situation and the issues arising from pleadings, we will set forth some of the material incidents concerning the contract involved herein; the situation as it existed prior to, at, and subsequent to, its execution.

Plaintiff was a tenant farmer with a wife and four children. At times his health was not good. He was seeking a farm to rent for the year 1940, and was told that the one-hundred-ten-acre farm in controversy was for rent. He learned that the owner lived in Oskaloosa. This tract had been rented for the prior year and the record indicates that some difficulties had arisen between the owner and the then tenant. Appellee looked the farm over and found it of fair average as to quality of land, but found the buildings badly run down and in need of extensive repairs. He went to Oskaloosa and contacted the owner. The parties were strangers. Not knowing appellee, Smith asked about him and asked the names of some people who had known him. Appellee identified himself and told Smith to see H. S. Life of Oskaloosa, Iowa, saying that Mr. Life had known him all of his life. Mr. Life was then and still is a prominent lawyer of that city. Later Smith and appellee again discussed the rental of the farm. Smith wanted to sell the farm rather than to rent. During the discussion appellee ad-

vised Smith that he was not in a position to raise sufficient funds to make purchase of the land and there is evidence to the effect that Smith told appellee that he would make terms so that appellee would be able to handle the deal. After some negotiations the parties agreed on the price and the conditions. By agreement they went to the office of Mr. Life and advised him of their deal, the terms thereof, and asked him to prepare a contract showing the sale and purchase. Mr. Life either drew the contract or had it prepared by his secretary, after which it was read over to the parties, signed, and each was given a copy thereof.

The contract was attached to the pleadings and it was one of the exhibits in the case. The agreed sale price was $8,800, of which $250 was to be paid at the signing of the contract, and the remainder by annual payments of $100 with interest at five per cent payable semiannually on March 1st and September 1st of each year; buyer to pay the taxes coming due in the future, and any assessments made against the real estate, and to keep the buildings insured for the benefit of the seller. Said contract provided that on any March 1st appellee would have the right to make payments on said contract of $100 or any multiple thereof; also that when half of the purchase price had been made the seller would execute to the buyer a warranty deed showing merchantable title in plaintiff and would take a mortgage on said real estate for the balance remaining. There was no forfeiture clause in the contract; neither did it contain a provision that the time or times of the payments were of the essence of the contract. Attorney Life stated that these two provisions were intentionally excluded from the contract.

It will be seen that had this contract been carried out according to its terms with respect to the annual payments, the life of the contract would have carried over a period of approximately eighty-five years, or until 2025 A. D. At the time appellee signed the contract he did not have the $250 called for as down payment. He paid $185. This was accepted by the seller who then agreed that the balance could be paid later.

About March 1, 1940, plaintiff moved upon the farm and was in possession when the suit was brought. His possession during the last two years was by tenant. When he moved off the farm it was because of failing health. He rented the farm and the tenant was in possession when the suit herein was brought. Upon taking possession of the farm, appellee began to improve the same. The bridge in the lane leading to the buildings had been washed out. Appellee rebuilt it, making access possible. He built a new eight-room house, partly modern; a double corncrib, hog house, chicken and brooder houses; also one hundred thirty rods of woven wire fence and about one hundred sixty rods of additional barbed-wire fence. He limed about twenty-five acres of the farm land. Much of the building work he did himself. Appellant Art Smith helped him in the building. The evidence shows that these improvements cost between $3,000 and $4,000. About June 1941, appellee received about $6,000 as an inheritance from a deceased parent. A large part of this inheritance was used to pay for the improvements. At that time there was a mortgage on the farm and the record shows that the appellee on June 9, 1941, paid Art Smith the sum of $2,785 and appellee stated that when he paid Smith that amount it was understood that same was to be used to pay off said mortgage. The record is not clear and definite as to whether such sum was used for that purpose. Smith does not deny having received such payment. At the same time, past-due interest in the sum of $215.35 was paid. It will be seen that in the first seventeen months following the making of the contract appellee had paid on the principal the sum of $2,970, or more than one third of the contract price, and in addition had made improvements on said farm of the value of between $3,000 and $4,000.

The appellants claim that at various times following the payment of $2,785 on June 9, 1941, appellee failed, neglected and refused to conform to the terms of the contract in the payment of installments coming due, interest, taxes, and insurance. This, appellants claim gave them grounds to declare the contract forfeited. Appellee does not claim that all of the payments called for in the contract were made in strict conformity therewith. Appellee does claim that the payment of the $2,785

made payment far in advance and also took care of interest for a number of years. He argues that even assuming that the annual payments and interest were required to be made irrespective of the $2,785 payment, the appellants had waived the same and the prompt and strict payments thereof, and were not in a position to claim a forfeiture by reason of such.

On March 29, 1946, appellants served upon appellee and the tenant in possession a notice of forfeiture and cancellation of the contract of purchase. This notice required appellee to make good all defaults within thirty days from that date—otherwise the contract would be declared forfeited and appellee declared to have no rights thereunder. Appellee did not comply with such forfeiture notice. He had rented the farm for the year ending March 1, 1946, and had sold his farming equipment to the tenant. Due to litigation between them, appellee was not paid the rent or for his farm equipment. Following the notice, appellee contacted appellant Art Smith, and advised him of his difficulty with the tenant; also that he thought he could sell or mortgage the farm. The record shows that appellee then told Art Smith that he could sell the farm for $150 per acre and that Smith advised him to hold out for $200 per acre. He likewise advised appellants that he was getting a loan to pay the balance on said contract. This was during the thirty-day period. Appellants do not claim that they told appellee that they would not accept the sum due, neither does the record show beyond dispute but what all of the steps taken by appellee to make the past due payments were told to appellants. Appellants were advised that appellee was making every effort to make good on the contract. It also shows that appellant Art Smith contacted the loan agent and was by him advised of the efforts being made to secure the loan and that in response to an inquiry as to how long it would take was told about thirty days, whereupon appellants told such agent to go ahead and get the loan.

Appellants deny having made the statement to go ahead and get the loan, but we feel, as did the trial court, that the record sustains appellee's contention in regard to such matter.

The record shows that at various times from June 9, 1941

to July 31, 1945, the appellee made various payments which were accepted by said appellants and credited upon the contract and that on July 31, 1945, appellee had paid on principal, $2,970, and interest, $1,394.37; also, that appellee had paid taxes on said land from 1939 to 1943 in the amount of $372.11.

Appellee claims and the record shows that during all of this time, from the signing of the contract down to the time of the notice of cancellation on March 29, 1946, the parties were on friendly terms, and at various times discussed the situation and the failure of the appellee to meet all of the payments promptly. There is evidence to the effect that appellant Art Smith told appellee to do the best he could and that said appellant would work along with him. Appellant testified that he liked appellee; that he had a good family and that he wanted to help him all he could.

The first intimation that appellee had that appellants were going to try to forfeit the contract was when the notice to that effect was served in March 1946.

The record shows that appellee was not in good health and had to move off the farm in 1945. He had rented the farm and sold his machinery and equipment, over which there was litigation, to the tenant, and appellee was thereby unable to make all of the payments on the contract. On June 7, 1946, appellee secured a loan on the farm and at once made to appellants a tender of the balance due, approximately $6,600. He made a proper tender of that sum and later did so by pleading, and later deposited the money with the sheriff. All such offers and tenders were refused.

Appellee in pleading alleged that appellants had by their acts and conduct waived their rights, if any, to have such contract forfeited. The trial court held that under the record such claim was sustained. The court further held that as there was no forfeiture clause in the contract appellants, by serving a notice of forfeiture, could not engraft onto said contract such a clause to the detriment of the other party. The court further held that in giving the notice of forfeiture appellants waived the provisions of the contract that payments on the principal be made as of the date of March 1st of each year, and held that after the service of such notice appellants

had no right to refuse payment of sums due on dates other than March 1st of each year. The court further held that the tender by the appellee was good. We quote two paragraphs of the decree of the court:

"The court holds that there is no evidence in the record that would justify a reformation of the contract to include a forfeiture clause. The court also holds that the attempted forfeiture gave the defendants no rights that they did not otherwise have under the contract as written.

"The court holds that as to the cross-petition of the defendants [and] as to each of the three counts thereof there is no evidence in the record sustaining any of them and therefore, denies any relief to the defendants under any of said counts in the said cross-petition."

The three counts referred to in the court's finding are set forth in the cross-petition and relate to the asking of appellants for the forfeiture of the contract, quieting title, and reformation of such contract.

We have gone over the record and fully agree with the finding of the trial court as set out in the two preceding paragraphs.

II. The principal question raised in this appeal involves the correctness of the decree of the trial court in granting appellee's prayer for specific performance of the contract between appellants and appellee.

The defense of appellants rests primarily upon the claim that appellee had failed, neglected and refused to carry out the contract between the parties; that by reason of such conduct the giving of the notice of cancellation or forfeiture of such contract on March 29, 1946, and appellee's failure to perform, in law terminated any rights appellee had in and to said contract. In considering this claim of forfeiture of the contract as made by appellants it is to be kept in mind that the contract between the parties did not contain a forfeiture clause; neither did it contain a stipulation that the time or times of payment of the purchase price was of the essence of the contract.

Many cases have been cited dealing with the rights of the parties to forfeit contracts where there has been a failure

on the part of one or the other to perform according to terms. We will call attention to some as showing the general rule to apply in such cases. In the case of Lake v. Bernstein, 215 Iowa 777, 246 N. W. 790, 102 A. L. R. 846, there was a suit brought by the purchaser to recover certain sums paid under a real estate contract. The contract was signed on July 5, 1928. The purchaser, one Shute, agreed to purchase from Bernstein a certain lot in Oskaloosa, Iowa, for an agreed consideration of $3,500. He made the down payment of $1,200 and was to have until November 1st following to pay the balance. On that date he would not or could not make the payment. He abandoned the contract but did not demand a return of the $1,200. The seller served notice of forfeiture of the contract by reason of the buyer's failure to pay the purchase price. Later, Bernstein sold the property to another. Shute, the first purchaser, assigned the contract to one Lake who brought suit to recover the $1,200. A verdict for Lake was reversed by this court. The matter of the forfeiture was discussed in the opinion. This court in discussing the matter called attention to the fact that the contract between Shute and Bernstein contained neither forfeiture clause nor stipulation making the time of payments of the essence of the contract. Such being the case this court held that Bernstein (appellant) could not procure a forfeiture of Shute's interest in the real estate by serving a notice of forfeiture. Citing Westerman v. Raid, 203 Iowa 1270, 212 N. W. 134; Frederick v. Davis, 133 Iowa 362, 110 N. W. 611; Cody v. Wiltse, 130 Iowa 139, 106 N. W. 510; Converse v. Elliott, 200 Iowa 1023, 205 N. W. 867. In the cited case the record showed that Shute had abandoned the contract. Speaking of the distinction to be made in such cases we quote from the holding in Lake v. Bernstein, supra:

"A distinction, of course, must be made between the forfeiture of a vendee's rights under a contract by notice in the way provided by statute, and the forfeiture of those rights by abandonment. In the one case the vendee loses his property through the contract and the statute and in the other he loses it through his own voluntary action in abandoning the property. *Of course, the mere failure to pay the purchase price, as provided by a real estate contract, does not in itself work a forfeiture*

*or an abandonment.* [Italics supplied.] If there is no [other] forfeiture, as contemplated by the contract and the statute, and also there is no abandonment, then the vendor's remedy against the vendee is to foreclose his contract as if it were a mortgage, or sue for the purchase price. Here, in the case at bar, however, as found by the district court, there was an abandonment by the purchaser, Shute. That being true, the district court erred as a matter of law in holding that the resale of the property by the appellant after the appellee's abandonment gave rise, under the circumstances, to a rescission." At page 784 of 215 Iowa, page 794 of 246 N. W.

In the present case appellee, Westercamp, had done nothing which could possibly be construed as an abandonment. He was in possession from March 1, 1940, down to the time of the service of the notice. During the last two years his possession was by a tenant and the record shows that he had taken active legal steps to secure actual possession thereof. We find nothing in the record to indicate that Westercamp contemplated abandoning the premises; the contrary affirmatively appears.

The case of Cody v. Wiltse, supra, was an action to quiet title. The claim was made that the purchaser of real estate had defaulted in the payments required by a contract wherein Cody sold and Wiltse and another purchased. The purchase price was $10,080 of which the initial payment of $500 was all that was paid. The contract contained no forfeiture clause and there was no stipulation therein that time was of the essence thereof. This court held that there could be no forfeiture thereof. In discussing the case this court said at pages 143 and 144 of 130 Iowa, page 511 of 106 N. W.:

"And in the absence of any provisional agreement therefor, a mere failure to pay will not of itself work a forfeiture. Forfeitures are not favored in law, and equity will never lend its aid to the arbitrary cutting off of legal rights and interests, especially where otherwise the vendor has an adequate remedy for the enforcement of his rights. That, for the breach of a condition subsequent—as in this case, a mere failure to pay at a time fixed—remedies ample for the purpose are open to the vendor cannot be the subject of question. He may sue on the

contract as at common law to recover the purchase price, or he may proceed under the statute to foreclose." (Citing cases.)

Further the court said:

"The statute relating to forfeitures under contracts of sale has application only to those cases where the contract itself makes provision for a forfeiture." Citing section 4299, Code of 1897 (now section 656.2, Code of 1946).

In the case of Holman v. Wahner, 221 Iowa 1318, 268 N. W. 168, this court stated that it was a settled rule of law in this state that the statutes relating to forfeitures under contracts of sale have application only to those cases where the contract itself makes provision for forfeiture. Citing Cody v. Wiltse, supra; Frederick v. Davis, supra; Waters v. Pearson, 163 Iowa 391, 144 N. W. 1026; Lake v. Bernstein, supra; Converse v. Elliott, supra. See, also, on the same subject, Schwab v. Roberts, 220 Iowa 958, 963, 263 N. W. 19, and cases there cited.

Many other authorities sustaining the rule laid down in the foregoing cases might be cited. It is sufficient to say that equity does not favor forfeitures and in the absence of contract provisions affording that right, the party who claims to be aggrieved is relegated to an action at law in damages or to a foreclosure of the contract under the statute.

Appellants place principal reliance upon the holding of this court in Mintle v. Sylvester, 202 Iowa 1128, 211 N. W. 367. We do not think that such case has application to the record facts. That was a suit brought by a purchaser who had paid part of the purchase price and defaulted on the balance, who in the suit sought to recover the sum paid (approximately $38,-000) on a purchase price of $140,000. The issue was as to whether the purchaser (Mintle) could recover under a claimed rescission. There Mintle claimed that the seller by serving a thirty-day notice of forfeiture, by retaking possession and bringing suit to quiet title, had put it beyond his (seller's) power to convey. He also made some claim that at the time fixed the seller did not have a merchantable title. The court held that there was no mutual rescission and that the vendor had insisted at all times upon going through with the contract. It is read-

ily apparent that the issue was not the same as in the instant case and the record facts are widely dissimilar.

It is our conclusion that this contract was not forfeited or canceled by the alleged notice of March 29, 1946.

III. Appellants in cross-petition pray for a reformation of the contract of January 10, 1940. We find little in the record to sustain such a claim. We have some doubt as to whether that issue was properly raised in the pleadings of appellants. We might say in this connection that the pleadings of appellants are prolix, involved, and we think unnecessarily long.

The record shows without dispute that the buyer and seller discussed the sale, terms, and the making of the contract. When the contract was made it was read over and explained by Mr. Life and a copy was given to each. There is in the record no evidence to show that appellants ever made any complaint that the contract did not contain the agreement of the parties— nothing to indicate any mistake, fraud, or overreaching. To reform a contract the burden would be upon appellants. Eglin v. Miller, 209 Iowa 326, 228 N. W. 305; Stillman v. Slifer Sav. Bk., 216 Iowa 957, 249 N. W. 230; West v. Hysham, 214 Iowa 349, 242 N. W. 19. Appellants claim that when the contract was made the attorney who prepared it stressed the necessity of the appellee making payments promptly. In argument they set out parts of the testimony of Mr. Life. We do not think that such testimony would support any finding of reformation. About all that such evidence tended to show was that the terms were talked over and appellee was told that it would be necessary for him to perform the contract. This would necessarily be implied the same as in any other contract.

Appellants in support of such claim cite section 656.1, Code of 1946. We fail to see its application. The contract contained no forfeiture clause. Various Iowa cases are cited by appellants. When analyzed, none of them supports appellants' claim.

The general principles of the law dealing with the reformation of contracts have been frequently set forth and are well settled. To establish such claim the evidence must be clear, satisfactory, and free from reasonable doubt. Schultz v. Lidtka, 179 Iowa 652, 161 N. W. 682. The written contract is presumed

to contain the entire agreement and all 'prior negotiations between the parties, and in the absence of fraud or mistake is conclusive between them. Banwart v. Shullenburg, 190 Iowa 418, 180 N. W. 190. See, also, Midland Mortgage Co. v. Rice, 197 Iowa 711, 198 N. W. 24; Allemang v. White, 230 Iowa 526, 298 N. W. 658, and cases there cited; Lankhorst v. Union Fire Ins. Co., 236 Iowa 838, 20 N. W. 2d 14. See, also, cases cited on page 542, 16 Iowa Digest (Reformation of Instruments). The claim of appellants as above set forth is without merit. We agree with the trial court that the record did not warrant a reformation of the contract.

IV. The record shows that as soon as appellee secured the loan he immediately offered to pay to appellants all that remained unpaid on the contract including any sums which had been advanced or paid by appellants. This offer was made both to appellants and to their attorney. What they did in law amounted to a tender, and was made orally and in writing. The appellants do not deny that such an offer was made but claim that such could only be made at the time fixed in the contract, and that a tender to pay at any other time was ineffective. With this claim of appellants we do not agree. The trial court held that under the record the tender was sufficient. We agree with such holding.

There is another reason why we think that it should be held that appellee could make payment at the time the tender was made. The entire record shows a course of dealings between the buyer and the seller wherein the seller accepted payments made on dates other than those fixed by the contract. In so doing, we hold that the seller waived any such claim.

V. The question as to the rights of the appellee to have specific performance of the contract has been argued by both parties to this appeal. Inasmuch as we are holding that there are other questions herein which are controlling, we refrain from going into such question. The issue as to the reformation of the contract has been decided adversely to appellants' claim. We have held that the appellee made a legal tender and that he had a right to do so at the time made. We have held that the contract entered into between the buyer and seller was not the subject of forfeiture as claimed by ap-

pellants. Such being the record we hold that the appellee was entitled to specific performance as a matter of right. Such was the order of the trial court. In so doing the court did not err. Its decree was right and the case is affirmed.—Affirmed.

MULRONEY, C. J., and OLIVER, BLISS, HALE, GARFIELD, SMITH, and HAYS, JJ., concur.