# IN THE COURT OF APPEALS OF IOWA

No. 21-1334
Filed October 5, 2022

**AD, LLC,**
    Plaintiff-Appellant,

**vs.**

**RAFAEL PARAMO,**
    Defendant/Counterclaim Plaintiff-Appellee,

**vs.**

**CASEY FENTON and DARRELL FENTON,**
    Defendants to Counterclaim-Appellants.
_____

Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.

Appellants appeal a district court ruling in a suit and countersuit involving a real estate contract. **AFFIRMED.**

Justin Vondrak of Bauerly & Langel, P.L.C., Le Mars, for appellants.

Jay P. Phipps of Phipps Law Office, P.L.C., Moville, for appellee.

Considered by Tabor, P.J., Badding, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**MULLINS, Senior Judge.**

Plaintiff, AD, LLC, and third-party defendants, Casey and Darrell Fenton,[1] appeal the district court's ruling, following a bench trial, on a suit and countersuit stemming from an oral contract between Casey and Rafael Paramo for the purchase of real estate in installments. The appellants contend the district court erred in finding (1) the oral contract did not contain a right of forfeiture, (2) the plaintiff breached the contract, and (3) the contract was for a period of fifteen years at an interest rate of 6.65%.

**I.      Background Facts and Proceedings**

A.      Introduction

Casey is the owner of AD, LLC, the plaintiff entity, which is a real estate holding company that now owns the real property involved in this litigation. Around 2000, Casey started a home-building business. Through that enterprise, he came into contact with Paramo, a carpenter with a "topnotch work ethic" and "[r]eally good" work products. Paramo progressed to working exclusively for Casey on a full-time basis.

This litigation involves the parties' oral agreement for Paramo's purchase of real property from Casey under an installment contract.[2] The parties' separate versions of the events leading to an agreement and the terms of the agreement can be described as nothing less than contradictory. What the evidence

---

[1] Casey owns the plaintiff entity. Darrell is Casey's father. The entity and the Fentons will be collectively referred to as appellants.

[2] It is unclear when title of the property was transferred to the entity. Because Casey is the sole owner of the entity, references to him in this opinion include him acting on behalf of the entity.

indisputably shows is that Paramo moved into the home in late 2004 or early 2005, and he paid Casey $650.00 every month from January 2005 through June 2018. During that same time period, Paramo also covered the cost of property taxes, insurance, and other expenses associated with the property by either paying them himself or reimbursing Casey.

B.      Casey's Version

According to Casey, sometime between 2003 and 2005, Paramo had recently experienced housing difficulties and, because the subject house was sitting empty at the time, Casey offered it to Paramo as a place to live, advising: "if that's where you want to go, go ahead and go there.   Just make sure all my expenses are covered."   Casey testified Paramo was originally just a tenant, but sometime between 2005 and 2009, Casey advised Paramo he would sell him the house on contract for $100,000.00, and he would "give him a $5,000 bonus towards the principal . . . a year for five years."   Whenever it began, under the purchase agreement Paramo was to pay $650.00 per month to cover "the interest payment, plus taxes and insurance."   In summary, according to Casey, Paramo would pay $650.00 toward interest only, plus applicable property taxes and insurance, and the principal amount would decline $5000.00 per year for up to five years so long as Paramo remained in Casey's employ.

Casey testified he owed somewhere between $75,000.00 and $85,000.00 on the home at the time they entered the agreement, in addition to $15,000.00 he owed to his father for money he borrowed to do renovations to the home.  Financial documents show that, as of February 2005, the note on the home had a principal balance of $72,274.81, payable in 119 installments of principal and interest

payments in the amount of $639.25, with an interest rate of 6.65%. The evidence shows Casey provided Paramo with the bank document containing these figures in early 2005, thus potentially indicating the parties' agreement would operate on terms similar to the promissory note. Yet, Casey submits the oral agreement contemplated a 10.4% interest rate, solely because that was the interest rate that applied to an agreement between Paramo's former girlfriend and a third party.

Paramo discontinued working for Casey in "2017ish." Then, in the spring of 2018, Casey directed Paramo to secure financing to finalize the purchase. According to Casey, Paramo was unable to secure financing, and he discontinued making monthly payments in June 2018. However, Casey agreed he unilaterally increased Paramo's monthly payment around this time. He testified he did this to more regularly collect tax payments from Paramo, although he agreed there were never any problems with Paramo paying real estate taxes in a timely manner. Thereafter, the taxes on the home were also not paid, and Casey received delinquency notices, which he later paid.

C.     Paramo's Version

According to Paramo, he began living in the subject residence in August or September 2004. He testified that when he moved into the house, he and Casey had already entered into an oral agreement for Paramo to purchase the home under an installment contract. Paramo testified the terms of the oral agreement were that Casey would sell him the home for $75,000.00 on the condition that Paramo continue working for him for the next five years. But, in the event Paramo quit before five years, then the price would go up to $100,000.00. The agreement called for Paramo to make monthly installment payments of $650.00. Paramo

testified Casey gave him numerous bonuses over the years and advised him he would put those bonuses toward the principal balance under the oral agreement. Paramo was only able to provide written documentation of one such bonus, in the amount of $1000.00, and he agreed he should only be given credit for that single bonus he could prove.

Paramo testified that following his payment in June 2018, Casey advised him he had to start paying $1250.00 per month because he did not work for him anymore and the bank wanted the money. Paramo went to the bank, but the representative Casey told him to talk to had no idea what Paramo was talking about. Paramo tried to make his $650.00 payment to Casey in July, but the property management company to whom he normally made his payment declined to accept any more payments from him because Casey told them the required payment was $1250.00. Because Paramo was paying taxes through that medium as well, he was no longer able to make tax payments to Casey either.

D.     Ensuing Litigation

The plaintiff Casey initiated this litigation against Paramo in August 2019, forwarding claims of breach of contract and unjust enrichment. In his answer, Paramo named the Fentons as third-party defendants and counter-claimed for breach of contract, unjust enrichment, promissory estoppel, and fraud.

Thereafter, in November 2019, Paramo was served with a "notice of forfeiture of real estate contract," which directed Paramo to cure conditions of default within thirty days or the contract would be forfeited. Paramo took no action. Then, in January 2020, an "affidavit in support of forfeiture of real estate contract" was recorded with the local recorder's office, having been submitted by Casey's

counsel. After the affidavit was filed, Casey's attempt at removing Paramo from the property was later dismissed.[3]

Trial was ultimately held in August 2021. In his pre-trial brief, Paramo asserted the terms of the contract involved a $75,000.00 purchase price paid in installments of $650.00 per month from January 1, 2005, with interest accumulating at 6.65%. He argued Casey breached the contract by upping the monthly payment in June 2018. Paramo requested specific performance of the agreement and an award of common law attorney fees.

In their brief, the appellants alleged that, in late 2009, Casey offered to sell Paramo the home for $100,000.00 at 10.4% interest, payable by minimum monthly payments of $650.00, with a reduction of the principal in the amount of $5000.00 per year for five years, so long as Paramo continued to work for Casey. The appellants claimed all of the payments Paramo made went toward interest, and he never paid anything toward the principal. The appellants also claimed Paramo breached the contract by failing to pay any principal and by discontinuing making payments in June 2018. They also asserted Paramo remaining in the home since that time amounted to unjust enrichment.

In its ruling, the district court found the parties entered into the oral agreement in 2005. The court found Paramo's version of the terms of the contract—$75,000.00 price, payable at $650.00 per month attributable to principal

---

[3] The record shows Casey attempted to serve Paramo with a notice to quit, which is a prerequisite to a forcible-entry-and-detainer action under Iowa Code section 648.3 (2019), but service was not accomplished. All we have in the record is Paramo's testimony that Casey attempted to remove him from the property through forfeiture, but the result of Casey's efforts "was dismissal."

and interest, at an interest rate of 6.65%—was more credible given all of the evidence presented. The court highlighted (1) Casey's testimony that he was only trying to cover his costs and had no intention of making money off of the transaction and (2) the terms of Casey's obligations under the note on the property when the parties entered the agreement, which involved a $72,274.81 principal balance, payable by monthly principal and interest payments of $639.25,[4] at an initial interest rate of 6.65%.[5]

The court found that Paramo met all of his obligations under the oral agreement through June 2018, but Paramo was unable to make any July payments because Casey increased the monthly payment "to $1,250 to cover taxes and insurance," although "[t]here was nothing in the original oral agreement about paying into escrow for taxes and insurance monthly, and [Paramo] did not agree to a modification of the contract in this regard." The court also found the parties' agreement did not provide a right of forfeiture. While the court acknowledged the parties never discussed the durational term of the agreement, it found a fifteen-year amortization schedule—apparently prepared as part of the litigation and not at the time of the agreement—admitted as evidence accurately represented the situation of the parties based on the circumstances. This schedule contemplated a $75,000.00 purchase price, less $1000.00 from principal attributable to the bonus Paramo was able to prove, payable over fifteen years by

---

[4] While the court noted these were "interest only payments," the financial documents clearly show the note payments were for both principal and interest.
[5] While the initial financial document states the interest rate would be variable, there is no evidence it ever changed. The most recent statement in the record showed the status of the loan as of November 2006. The interest rate remained at 6.65% at that time.

monthly principal and interest payments of roughly $650.00. Based on this schedule, the remaining balance following Paramo's June 2018 payment was $11,118.05. The court ordered Paramo to pay plaintiff this amount, plus interest of $2345.76 and past real estate taxes and insurance premiums in the amount of $11,678.00, for a total of $25,141.81. The court ordered the appellants to transfer marketable title of the real estate to Paramo upon receipt of said payment.

The appellants now appeal.

## II. Standard of Review

Because the appellants' claims on appeal amount to challenges to the sufficiency of evidence supporting the district court's conclusions, our review is for legal error. *See Pippen v. State*, 854 N.W.2d 1, 8 (Iowa 2014). The district court's findings "have the force of a special verdict and are binding on us if supported by substantial evidence." *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 388 (Iowa 2010). In a substantial-evidence review, we do not reweigh the evidence—we only determine whether the finding reached is supported by substantial evidence. *Jackson v. Bridgestone Ams. Tire Operations, LLC*, 973 N.W.2d 882, 887 (Iowa Ct. App. 2021). Evidence is substantial "when a reasonable mind would accept it as adequate to reach a conclusion." *Pippen*, 854 N.W.2d at 8 (quoting *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995)). In conducting our review, "[w]e view the evidence 'in the light most favorable to the trial court's judgment,'" *Brokaw*, 788 N.W.2d at 388 (quoting *Miller v. Rohling*, 720 N.W.2d 562, 567 (Iowa 2006)), and "we construe the evidence broadly to uphold, rather than defeat, the trial court's judgment." *Grall v. Meyer*, 173 N.W.2d 61, 63 (Iowa 1969).

## III.    Discussion

The appellants first contend "the district court erred when it found that the oral contract for purchase of real estate did not contain a right of forfeiture."  The appellants agree with the district court's assessment that the parties' dealings were "sloppy and unbusinesslike."  However, the appellants assert "nothing in the record reflects that there was never a forfeiture clause in the oral agreement."  Assuming without deciding that is true, there is also nothing in the record evidence to suggest the oral agreement contemplated a right of forfeiture.  While the appellants rely on their pursuit of forfeiture as evidence of the existence of a forfeiture provision, there was no independent evidence of the same, and the supreme court has agreed that, absent a forfeiture clause, a party cannot, "by serving a notice of forfeiture, . . . engraft onto said contract such a clause to the detriment of the other party." *Westercamp v. Smith*, 31 N.W.2d 347, 711–12 (Iowa 1948) ("[A]gree[ing] with the finding of the trial court" on this point and others).  Also, other evidence shows the result of the appellants' pursuit of gaining possession of the property was dismissal.  Absent any evidence that the agreement contemplated forfeiture, we conclude there is substantial evidence to support the district court's findings and conclusions and reject the appellants' challenge on this point.

The appellants next argue "the district court erred when it found that the plaintiff breached the oral contract with the defendant."  They appear to challenge the district court's conclusions relating to the time period around June 2018.  The district court found the appellants' breach involved the increase in Paramo's monthly payment and what amounted to the refusal to accept payment in the amount of what was originally agreed.  The appellants essentially submit the court

got it backwards, asserting the increase in payment was due to Paramo's breach involving failure to pay for taxes and insurance. We summarily find the district court's chronicling of the events is supported by substantial evidence. Casey himself agreed he unilaterally increased Paramo's monthly payment around this time to more regularly collect tax and insurance payments from Paramo, although he also agreed there were never any problems with Paramo paying for the same in a timely manner up to that point. While Paramo was responsible for these items under the agreement, the evidence shows Casey also effectuated the denial of Paramo's payments through the property management company. Because a reasonable mind could accept the evidence as adequate to conclude a breach was committed on the part of the appellants, we affirm on this point.

Finally, the appellants argue "the district court erred in determining the oral contract was for a period of 15 years at 6.65%." The substance of the argument is limited to the term of the contract. The appellants mainly complain about the district court's reliance on the fifteen-year amortization schedule to ultimately reach a term of fifteen years. While it is certainly true that the term of the agreement was not discussed by the parties, the amortization schedule is a component of the evidence, and the terms of the agreement between the parties as shown by the evidence that the district court found credible fit squarely within its confines. Even though the term was never discussed, using the schedule as an evidentiary tool after plugging in the proper numbers as shown by the evidence—$74,000.00 total principal,[6] monthly principal and interest payments of $650.00, and an interest rate

---

[6] This reflects the $75,000.00 purchase price less the single $1000.00 bonus Paramo submitted evidence that Casey put toward the principal.

of 6.65%—shows the installment contract would have been completed in fifteen years if everything went according to plan. As such the district court's finding on this point is supported by substantial evidence.

## IV. Conclusion

We reject the appellants' challenges to the sufficiency of the evidence and affirm the judgment of the district court.

**AFFIRMED.**