Weaver, J.
Jeremiah J. Betts, a resident of. Polk county, Iowa, died, leaving a will by the terms of which his son Jeremiah L. Betts was disinherited, and his estate, after providing for his wife, was to be equally distributed between his remaining children. The son, Jeremiah 1., successfully contested the will on the ground of undue influence and of the testator’s mental incapacity to make a testamentary disposition of his estate. See Betts v. Betts, 113 Iowa, 111. When this litigation had terminated in favor of the contestant, Shepherd W. Betts, and two of the other children," who had been among the proponents of the will, brought the *73 present action for a partition of the real estate of which their father died seised. The petition alleges that the sole heirs and next of kin surviving the said Jeremiah J. Betts deceased were his widow, Elizabeth A. Betts, and their six children, Shepherd W. Betts, Lestine M. Lacey, and Martin O. Betts, plaintiffs, and Jeremiah I. Betts, James W. Betts, and Hannah E. Sharp, defendants, and that since the death of the said Jeremiah J. Bettts, the widow had also died intestate, whereby the title to the entire estate had become vested in said six sons and daughters in equal shares. Further alleging, plaintiff states that, previous to bringing this action for partition, his said sister, Hannah E. Sharp, had sold and conveyed to him all her share, right and interest, in the lands of which their father had died seised, and that said lands are now owned, and should be divided and partioned in the following proportions: To Shepherd W. Betts, two-sixths, and to Martin G. Betts, Lestine M. Lacey, Jeremiah L. Betts, and Walter W. Betts, each, one-sixth part. Due service of the original notice of the action was accepted by each of the defendants on November 6, 1901. Two or three other parties claiming liens or other indirect interests in the property were made defendants and appeared; but these matters were amicably arranged, and have no bearing on the controversy before us. Neither Mrs. Sharp nor any of the other defendants appeared to contest the partition, or to deny the allegations of the petition as to the nature and extent of their respective rights to the property, and on January 27, 1904, the default of the defendants was entered and a decree rendered by the court establishing and confirming the respective shares of the parties as alleged by the plaintiffs, and appointing referees to examine the land and appraise its value as a whole as well as the value of each of the several tracts of which it was composed, and to determine and report to the court whether said land could be equitably divided in kind without prejudice to the interests of the parties. On February 12, 1904, the referees re *? ported their appraisement and their finding that it was impracticable to equitably partition the land in kind. On the same day Hannah E. Sharp appeared by her counsel, and filed a motion to set aside the default and decree as against herself, alleging, as ground thereof, that the deed made to her. brother Shepherd W. Betts, of her interest in the lands of her father’s estate, was made and delivered as a mortgage only to secure the payment of an indebtedness owing to him from herself; that having confidence that her said brother would take no advantage of her in said proceedings, or claim any other or greater right than those of a- mortgagee, and believing that plaintiff’s attorney, who had been the legal advisor of the family in the settlement of the estate, and had knowledge of her rights in the premises, would see that they were properly protected, she had refrained from making an earlier appearance until the entry of the preliminary decree revealed the plaintiff’s violation of her trust and confidence. With this motion, Mrs. Sharp also filed an answer and cross-bill, setting out the matters last-above referred to, and alleging her readiness to pay the said Shepherd W. Betts the full amount of her debt to him. On this showing, she asks that her deed be held and decreed to be a mortgage only; that the amount of the debt secured thereby be ascertained, and upon payment thereof by her, the title to one-sixth of the lands of her father’s estate be quieted in her. After hearing the evidence offered, the court sustained the motion to set aside the default and decree as against Mrs. Sharp, and thereafter entered a decree in her favor upon the merits of the case, adjudging the deed to be a mortgage only, and providing that upon payment of the sum found to be secured by said deed the title to one-sixth of said lands be quieted in her. Erom this finding and decree, Shepherd W. Betts appeals.
After reading and re-reading the evidence in this case, we find ourselves unable to agree with the conclusion reached by the trial court. While, if we could accept the testimony *75 of Mrs. Sharp as in all respects literally true, the deed would have to be treated as a mortgage, the record as a whole appears to forbid such a result. To deprive a deed, which is absolute in form, of its character as a full and effective conveyance, and to convert it into a security, requires something more than a doubtful showing or an uncertain preponderance of the evidence. We must start with the presumption that the instrument is what it purports to be; and, although the presumption is not conclusive, it is to be overcome only by proof, which is reasonably clear and satisfactory. Langer v. Meservey, 80 Iowa, 158; Corbit v. Smith, 7 Iowa, 60; Knight v. McCord, 63 Iowa, 429; Kibby v. Harsh, 61 Iowa, 196; Hyatt v. Cochran, 37 Iowa, 309. The testimony of Mrs. Sharp.is not in all respects consistent with itself or with the claim she now insists upon. . She is corroborated in no important respect by any other witness except her husband, and his testimony is by no means clear or satisfactory. It appears that in the year 1900, and while the original litigation was still undetermined, and the exact quantity and value of her interest in her father’s estate was not yet ascertainable, Mrs. Sharp undertook to obtain a loan of $2,000 from a bank in Bes Moines. The bank agreed to accept security upon her homestead to the amount of 1,500, and she offered to mortgage her interest in her father’s estate for the remaining $500; but this was declined. At this juncture she called upon her brother Shepherd for assistance, and proposed to give him a mortgage upon her said interest in the estate if he would lend her the $500, or become her surety at the bank. It is her version that Shepherd refused to take a mortgage, but consented to sign the note at the bank, if she would secure him by a deed. This is flatly denied by the appellant. He asserts that he signed the note, and thereafter paid it, in consideration of an absolute conveyance. The conceded result of the transaction seems to be that Mrs. Sharp did execute and deliver the deed to her brother, and he united with her in making a note to *? the bank for an aggregate amount of $820. This sum included or covered several items of indebtedness, which the loan she sought was intended to pay, together with $130 in cash to herself. The note was subsequently paid off by Shepherd. It will be observed that the consideration named in the deed is $1,000. Shepherd swears that he subsequently paid his sister the balance of $180. This she denies.
Among the circumstances tending,, to corroborate the claim of Shepherd that the conveyance was intended to be absolute we may mention the following: Mrs. Sharp is a woman of fair English education, and admits that she knew and understood that she was giving a deed absolute in form. The conveyance was by warranty deed, without exception or condition, of all her undivided interest in the land. No written defeasance or counter-conveyance of the land was executed or delivered by the grantee. Two or three months later she with her husband executed and delivered to Shepherd a second or “ correction deed,” again purporting to convey to him all her undivided interest in the land, and adding thereto the following clause: “ We represent our undivided interest in said land to be at least one-sixth thereof, but if it should develop that the same is the undivided one-fifth thereof, then, in either case, all our undivided interest,, whatsoever the same may be, is intended to be conveyed hereby. It is further declared to be our intention to .convey hereby all our interest in the estate of Jeremiah J. Betts, deceased, whether the same shall consist of real or personal property, together with all our interest in the estate of the surviving widow of the said Jeremiah J. Betts, whatsoever the same may be. In other words, it is the intention hereof to place the said Shepherd W. Betts in our place and stead, to the end that he shall receive, upon the final settlement of the estate of the said Jeremiah J. Betts, and upon the final settlement of the estate of his now surviving widow, Elizabeth A. Betts, any and all property which otherwise would be *77 received by us had this instrument and the one herein referred to not been made.”
In the year 1903, and after the commencement of the present action, and several months before the default of Mrs. Sharp therein, Shepherd W. Betts, as administrator of his father’s estate, made his final report to the court, in which, after showing the amount of personal estate for distribution, and the distributive share of each heir, he alleg'ed that he had become the purchaser of the share of Hannah E. Sharp, and that the portion that otherwise would have been hers was therefore due to himself. This report was approved, the right of Shepherd to receive the share of Mrs. Sharp was confirmed and he was discharged, without objection or exception on her part. Again it is shown that after these conveyances had been made, a creditor of Mrs. Sharp, believing that she had an equity or interest in the property of the estate, sought to reach it by an action in court. In that proceeding Shepherd W. Betts claimed to be the absolute owner of the property, and, as a witness, testified in the presence of Mrs. Sharp, and without exception or denial by her, that he had bought her interest in the property and was the real beneficial owner thereof, and that he had paid therefore by assuming the payment of the note to the bank for $820 and giving to his sister the further sum of $180 in money. Still, again, during the pendency of the present action, Mrs. Sharp has been adjudged a bankrupt, and discharged as such under the statutes of the United States. In the bankruptcy proceedings she executed and filed a schedule, which she averred to be a correct inventory of all her property real and personal whether in possession, reversion, remainder, or expectancy, and including property held in trust for her, but made no mention or disclosure of the property or right she now claims. In the same proceeding she made what she alleged to be a full and complete list of her creditors, but the name of Shepherd W. Betts does not appear therein. The banker, at whose place of business *78 she claims the agreement was reached between herself and her brother, and who drew the first deed and took Mrs. Sharp’s acknowledgment thereof, heard nothing to indicate that the deed was intended as a mortgage. Mrs. Sharp’s statement in her affidavit in support of the motion, to the effect 'that she did not know or suspect that her brother claimed to be the absolute owner of the share inherited by her-until after the preliminary decree was entered about February 1, 1901, is disproved by her own statement as a witness. Being asked why she failed to disclose this property in the bankruptcy proceedings, she replied in substance that it was because she had conveyed it to Shepherd, and that he had told her that there was not a cent left in the estate for her. This denial by him of any further right on her part in the estate occurred at least a year before she permitted herself to 'be defaulted and decree entered confirming her brother’s title. When we consider this admission, and the further conceded fact that from November, 1901, to February, 1901, the petition of Shepherd had been on file, with due notice thereof to Mrs. Sharp, asking a confirmation of his claim of absolute ownership, and that there is not the slightest evidence of any promise that he would accept anything less than the relief demanded, the assertion now made by her that she was lulled into permitting the default by her confidence that her alleged equitable ownership would be voluntarily conceded and protected without her appearance, borders on the absurd. If the record does them no injustice, neither of these parties.is constructed on that plan; and, considering the bitter strife that has prevailed between the members of this family antedating the death of their father, and continuing without cessation to the present, mutual confidence could scarcely go farther than mutual certainty that neither would willingly waive or forego an advantage gained over the other.
Several witnesses testify to admissions made in conversations by the appellee that she had sold her interest in the *79 estate to Shepherd for $1,000. Finally, we may add that this consideration is not so grossly inadequate as to suggest fraud or add special weight to the claim that the conveyance was not intended to be absolute. At the appraised value of the land at the date of the trial, the alleged share of the plaintiff in the estate after deducting liens, costs, expenses, and charges, could not exceed $2,000. At the time the deed was made the original litigation over her father’s will and estate was still pending, and its termination and results were uncertain. Moreover, the mother was still living with a right to one-third of the entire estate which she could give, convey, or devise to whom she pleased, and under these circumstances we are not disposed to think there was any-marked inadequacy of consideration.
The claim of the appellee has no sufficient support in the record, and the decree of the district court granting the relief prayed in the cross-petition is therefore reversed.