MYRTLE E. RODGERS, appellant, v. HAROLD E. CUMMINGS et ux., appellees.

No. 48166.

(Reported in 56 N.W.2d 12)

DECEMBER 16, 1952.

Ralph L. Powers and Ralph U. Woodcock, both of Des Moines, for appellant.

McManus & O'Connor, of Manson, for appellee.

SMITH, J.—Plaintiff is defendant Harold E. Cummings' sister. Defendants are husband and wife. Unless otherwise specified reference to defendant will mean Harold. The mother, Zella Cummings, on October 31, 1945, deeded the premises in question to plaintiff. July 13, 1948, plaintiff deeded a half interest to defendant. It is this last mentioned deed plaintiff seeks in this suit to have canceled, alleging nondelivery, no consideration, her own incompetency due to physical and mental illness and some "mental, moral compulsion" exerted by her mother when the mother expressed concern over her own act in excluding her son

from the deed of October 31, 1945. The mother died November 13, 1948. This suit was commenced August 29, 1950.

Defendants answer that the mother's deed to plaintiff was really in trust for the benefit of both children and deny the other material allegations above referred to. They also cross-petition, asking that the respective interests of plaintiff and her brother be confirmed accordingly and for partition.

From a decree for defendants upon plaintiff's petition and also upon the cross-petition plaintiff appeals.

I. It is practically established that the deed from the mother, Zella Cummings, to plaintiff was given preparatory to the mother's application for old-age assistance. There is no denial of defendant's testimony of his conversation with plaintiff two or three days after the deed was recorded: "I found out when Myrtle called me on the telephone and told me that mother was getting her old-age pension and I said 'Well, how did she get it?' 'Well' she said 'she deeded the property to us.' I said 'You mean she deeded it to you and me?' And she said 'Yes.'" Plaintiff did not deny this telephone conversation.

Plaintiff testified: "Q. How long after the deed was recorded did she go on old-age pension? A. That I don't know * * *." She also says the doctor told her her mother was " 'entitled to old-age assistance and you should apply for it.' "

There is no direct testimony as to that being the mother's purpose in deeding the property to her daughter but that plaintiff so understood it seems clear. Her testimony also indicates an understanding that it was not to be an absolute conveyance in fee simple of the entire ownership. On direct examination she said her mother also made a will: "Q. Did you see that will? A. Yes. Q. And what were the provisions of that will? A. Then I was to have the property and live there so long as I wanted to, all of my life."

Again she says, when asked by her counsel as to her understanding of the effect of the deed she herself had made: "Well, I thought the will * * * stood above that. I didn't think the deed had power over the will. * * * Mother said in her will that if I should ever marry, then she wanted the place sold and my brother to have half of it, and that was the only conditions. So I thought if it was deeded that under those conditions then he

would get it. I thought the will had power over the deed. That explains it. That is the reason I made the deed in July, 1948, in my brother's name. * * * He did not pay me anything in consideration for this deed."

Defendant testified he went to his mother and when plaintiff came in "my mother asked her if my name wasn't on the deed and she said it wasn't but she said she would have it put on." There was no objection to this testimony and it stands uncontradicted.

On cross-examination plaintiff testified: "Q. Does the will give you a life estate in this property? A. Yes it does and that was mother's wish, and that is the absolute truth, so help me, as I sit here."

Plaintiff on cross-examination disclaimed memory of the circumstances of the actual execution of her mother's deed—by whom and where it was drawn and by whom recorded. She did say on direct examination that it was drawn at the county recorder's office. She testified the will was recorded in the recorder's office but when asked as to whether her mother's estate was administered replied: "I don't know what you mean when you say opened and closed." We are not favored with any evidence of the actual fact or any copy of the will.

█ We are persuaded the *purpose* of the mother's deed was to make possible an old-age pension for her and that it was not her *intention* to exclude her son from all mention in it. And it seems probable plaintiff's purpose in deeding a half interest to her brother was to carry out her mother's wishes.

II. Nor do we find sufficient evidence of any mental incompetence on plaintiff's part to warrant setting aside her deed on that account or on the ground of undue influence. There is no claim defendants or her mother ever asked her to execute the deed or that defendants even knew of its execution until after plaintiff had it recorded and delivered to defendant Bonnie Cummings. Whether the mother ever learned of it does not appear.

The contention is that plaintiff's mind and judgment were impaired and weakened by physical and mental illness and that she was under some undue influence exerted by her mother. Doctor Ethel Olson, "a graduate of the old Davenport school" ("not the Palmer School") was called as a witness for plaintiff. The doctor, as did other witnesses, testified to the extremely close

relationship between plaintiff and her mother and plaintiff's almost morbid anxiety to comply with her mother's wishes without regard to the consequences to herself.

But on cross-examination the doctor said: "I do not recall anything in the summer of 1948 about Myrtle's conduct that was unusual. * * * Myrtle was not especially of unsound mind only that, just dominated I would say * * * by her mother's wishes. I would say she was a very devoted daughter—more than you see in most cases."

But plaintiff herself testified her mother never asked her to make the deed to her brother or even expressed a wish that she do so: "* * * mother said to me, 'Myrtle, I wonder if I did the right thing.' That is all she ever said."

Undoubtedly plaintiff is an emotional, and somewhat erratic, individual. She has been twice married. The first marriage was annulled for some undisclosed reason, the second ended in divorce, also unexplained. These facts may be merely coincidental. Her own testimony however shows an impulsive nature, eager to do right—eager to do with the property whatever her mother desired her to do.

In that sense, it may be said her mother was the dominant party in a confidential relationship so far as the property was concerned. But it is apparent both ladies considered the property to be still under the mother's control and we are not prepared to hold her influence in that respect undue or improper so far as concerned any rights of plaintiff.

The parties on appeal practically treat the question as one of fact. Plaintiff cites 16 Am. Jur. and *498* A. L. R. 424 (in another place she cited *698* A. L. R.) to the proposition that a deed may be set aside where grantor's will power has been weakened by sickness and the natural resistance to influence impaired. There is of course no such volume of A. L. R. However, there can be no quarrel with the general rule as stated. The trouble is we find in the record no sufficient basis for its application here.

Defendants' brief is even more reticent as regards cases or authorities in point. We must conclude, after some search on our own account, that there are none strictly in point on the facts. However, on principal we see no reason for assuming the mother exercised any control over plaintiff or the property inconsistent

with what was the original purpose of her original deed to plaintiff.

We find no more basis here for rescission or cancellation of plaintiff's deed to her brother than would appear for setting aside the mother's deed to plaintiff. Plaintiff is not an ignorant person. She had worked for the State Board of Social Welfare. At the time these deeds were executed she was a saleswoman and as such she won, by superior salesmanship, a trip to New York at the expense of her employer. We must conclude she knew the original purpose and intent of her mother in making the first deed and acted accordingly in making the deed in question.

III.   Though plaintiff pleaded both nondelivery and failure of consideration we find no discussion of either proposition in the briefs nor is there any basis in the record for any serious discussion. The testimony of defendant Bonnie Cummings is undisputed that plaintiff handed her the deed and said " 'Here, Bonnie, will you give this to Harold when you get home' " and that the witness said "I will" and did give it to him.

As to want of consideration, what we have said of the nature of the transaction is sufficient answer. Both daughter and son rendered service to the mother but it is doubtful whether it was the consideration for either deed.

IV.   One other matter requires notice. Plaintiff pleaded for alternative relief by way of reformation, to make the deed show a reservation to her of a life estate in the undivided half interest conveyed. This is based on her testimony that the mother's will so provided and her own belief that it would prevail "over the deed"—that is, over her deed to her brother. In other words, she claims she deeded the half interest to her brother under the mistaken belief that by reason of her mother's will it was already burdened or would be burdened with a life estate in her favor—this in spite of the absolute deed from her mother to herself.

She makes no claim that she inadvertently omitted expressly reserving a life estate or that she intended to make such reservation. The most she urges or could urge was a mistake of law on her part, in no way induced or contributed to by her brother. She mistakenly thought it unnecessary to make any reservation.

We need not enter into a consideration here as to when or under what circumstances equity will decree reformation to correct a mere mistake of law. Our decision is not based on any technical question as to the nature of the claimed mistake. We deem the rule relating to quantum and clearness of proof applies in any case. The terms of what is claimed to have been the real agreement must be shown. 76 C. J. S., Reformation of Instruments, section 18, page 344, notes 31, 32.

It is well settled that in a suit for reformation the proof must be clear, satisfactory and convincing. Westercamp v. Smith, 239 Iowa 705, 716, 31 N.W.2d 347; McMinimee v. McMinimee, 238 Iowa 1286, 1289, 30 N.W.2d 106. That means both proof that a mistake was made and proof of what was really intended.

What is the evidence here? That plaintiff intended to carry out her mother's wish as expressed in her mother's will? The only evidence of that is found in plaintiff's inadequate testimony. It is vague and uncertain: "Mother wanted me to have a home there so long as I lived and she made out a will to that effect." "I was to have the property and live there so long as I wanted to, all of my life." "Mother said in her will that if I should ever marry, then she wanted the place sold and my brother to have half of it."

There is no evidence when this will was drawn or what became of it. Its complete terms are undisclosed. The deed to plaintiff was doubtless drawn to enable Zella Cummings to qualify (or appear to qualify) for old-age assistance. We can only guess as to her wish as to the final disposition of the property.

A court of equity under this record can only accept the situation as the mother and daughter created it. Reformation must be denied because the evidence is not clear, satisfactory and convincing as to plaintiff's real intention other than appears in the deed.

The decision of the trial court must be affirmed and it is so ordered.—Affirmed.

All JUSTICES concur except Mulroney, C. J., who takes no part.