VERA MILLER, appellant, v. M. H. MARTIN et al., appellees.

No. 48671.

(Reported in 70 N.W.2d 141)

MAY 3, 1955.

Franklin Jaqua, of Humboldt, for appellant.

Linnan & Lynch, of Algona, for appellees.

HAYS, J.—Plaintiff seeks to have a warranty deed reformed and declared to be a mortgage, alleging mistake, fraud, misrepresentation, and conspiracy between the defendants. Defendant Martin asks that title to the property embraced in the deed be quieted in him. Defendants Jensen disclaim any interest therein. The trial court held that plaintiff had failed to establish her allegations by clear, satisfactory and convincing proof. It dismissed the petition and quieted the title in Martin. Plaintiff appeals and submits to this court what is primarily a question of fact.

Appellant, a widow, owned and resided on Lots 9 and 10, Block 2, Town of Dakota City, Iowa. She also owned and operated a cream and poultry business which was not a flourishing one. She had an adult son, Leonard, who, prior to date here material, had worked in said business. Partly, at least, due to his conduct her financial standing was not good and she was anxious to eliminate him from any control over the home and the business. In 1953 the business was failing and funds were desperately needed. Her home was mortgaged for some $2700, with the holder of the mortgage being willing to increase it to $3500, but no higher. She had offered her home for sale and states that an offer of $6500 had been refused. She states that $4000 would meet her bills and she wanted to save the home.

Appellee Martin resides in Humboldt and is engaged in making loans on town properties. Harlyn Stoebe, a practicing attorney at Humboldt, has represented Martin in many legal matters connected with the loan business. It appears from the testimony of both Stoebe and Martin that in making the loans it was the usual practice for Martin to take a deed to the property. He would then give a contract of sale back, which contract contained a forfeiture clause. It was also his practice to require the borrower to pay all expenses incidental to the loan, including fees to his attorney for examining the abstract of title. If he buys a property outright, he pays for the title examination. Martin testified: "It is according to how I buy it whether I pay my own attorney for examining the abstract." It also appears that Martin would have nothing to do with the son, Leonard.

Appellees Jensen, husband and wife, formerly lived in Minnesota, coming to Iowa in 1950. They appear to have known Martin prior to that date. Shortly prior to 1950 they lost a daughter after a prolonged illness. While living in Minnesota and continuing during the time in question they owned or had an equity in a Minnesota farm. The value thereof does not appear; however, they clearly were not possessed of substantial means. In June 1951 Mrs. Jensen went to work at the cream station candling eggs. Mr. Jensen, in October 1951, went to work for appellant as a truck driver. Their relations appear to have been very friendly up to early in 1953, when, as Mrs. Jensen states, "We were fired by Mrs. Miller."

In August 1951 appellant was seeking a loan on the lots in question. She states that she and Mrs. Jensen talked with Martin at his home and asked him to make a loan. He agreed to, and did, look at the place and said he would loan her $4000; but "as long as Leonard had done the way he did, I would have to let Mr. and Mrs. Jensen have my house in their name and I was to pay them fifty dollars a month for my payments." This is denied by both Martin and Mrs. Jensen.

Martin states that the two came to his home and wanted him to buy the property; that he told her he had all the town properties he wanted; that Mrs. Jensen said: " 'We will buy it off of you' "; and he said: "I will have to look at the place"; that he looked at the place and told her he would take it.

Mrs. Jensen states there was no talk of a loan; that Mrs. Miller had asked them to buy it because Martin would not deal with her on account of Leonard. They talked with Martin, who refused to buy; that she told him Mrs. Miller had talked them into taking it over and they would buy it from him.

On August 24, 1951, Mrs. Miller, Mrs. Jensen and Martin met at Harlyn Stoebe's office. Martin had already discussed the matter with him. There Mrs. Miller signed the warranty deed in question, in which Martin was named as grantee. There is a dispute as to whether this deed was read by or to Mrs. Miller. She also signed a power of attorney authorizing Martin to satisfy the existing mortgage. Also at or about this time, the record is confusing, a contract of sale was entered into between Martin and the Jensens. It bears the date of September 12, 1951, and was filed for record on July 31, 1952.

This contract embraced two properties: The lots in question, which were sold to them for $4000 with no down payment. Two lots, known as the Clark property, sold for $2778 with a down payment of $278. One hundred dollars a month was to be paid on the contract, but it is clear that $50 was to be paid on each property. It contained a forfeiture clause. Mrs. Miller continued to live in the property, paid the 1952 taxes and the $50 a month to the Jensens until in January or February 1953. No written agreement was made by Mrs. Miller and the Jensens.

The record shows that from the $4000 was deducted the amount of the mortgage, some delinquent checks, and taxes. Also

all expenses incidental to the transaction, including revenue stamps for the deed, and the fees of Mr. Stoebe for examining the abstract of title and preparing the papers, including the Martin-Jensen contract of sale. The balance of $1055.37 was paid to her.

While the time material here is when the instrument was executed, this record shows a series of transactions following that time which we think throws considerable light as to the nature of that original transaction.

In September 1952 the Jensens, by quitclaim deed, surrendered the Clark property to Martin for which they received nothing. Under date of September 30, 1952, appears a $2000 note of the Jensens payable to Martin. Mr. Jensen states that when his daughter died, in 1949, Martin loaned him some money —about $500—to help pay expenses; that at that time he owed different parties in Minnesota about $1500 arising out of such illness and death; that the $2000 note represents these amounts and he was given this by Martin in 1952 to pay these debts. He states Martin paid him the amount in cash; he deducting and returning to Martin the $500 he owed him. The parties owed, and the amounts, are not clearly shown. Martin says this $2000 note represents cash which he took from his safe-deposit box and gave Jensen to take care of old medical bills. On the back of the note is a statement that it is secured by a mortgage on the lots in question.

In February 1953 trouble between Mrs. Miller and the Jensens culminated in their leaving her employment. The last of February she mailed $50 to Martin which was returned to her by Mr. Stoebe with a statement that she owed Martin nothing; that it probably belonged to Jensens and told her to send it to them, marking it "rent." On March 18, 1953, Jensens quitclaimed their interest in the lots to Martin and received back the canceled $2000 note. On March 19, 1953, Mr. Stoebe wrote Mrs. Miller that the Jensens were delinquent some three months' payments on the contract with Martin; that for release of the $2000 obligation by Martin, Jensens had quitclaimed their interest in the lots to Martin. A lease for the lots was enclosed calling for $50 a month rental. A postscript to said letter read: "Please note

that no demand is being made either by M. H. Martin or Alvert Jensen for past due rent in view of the fact of your payment of taxes, which has come to our attention." The lease was returned unsigned and this action commenced shortly thereafter.

The record shows that the Jensens have never invested a cent of their money in this property. If they were delinquent some three months in their contract payments to Martin, they failed to apply thereon all that Mrs. Miller paid them, as there does not appear to be more than one month's delinquency by Mrs. Miller, if that. Since March 1953 all payments have been made to the clerk of court and she states she is able and willing to continue the payments. Martin places the value of the property in 1951 to be $4000 to $4200. Other witnesses place it at $7000. The trial court found it to be worth $5500.

█ The law is well settled that in this type of action a deed absolute in form is presumed to convey a fee and to indicate that it was not intended as a mortgage. Betts v. Betts, 132 Iowa 72, 106 N.W. 928; Hinman v. Sage, 208 Iowa 982, 221 N.W. 472. The burden is upon plaintiff to establish the same by clear, convincing and satisfactory proof. Rodgers v. Cummings, 244 Iowa 116, 56 N.W.2d 12; Heng v. Heng, 244 Iowa 226, 56 N.W.2d 484.

█ However, there is no question but that a court of equity may reform an instrument when it fails to express the true agreement of the parties. Relief may be granted without regard to the cause or reason for failure to express in the written agreement, the agreement actually made, whether due to fraud, mistake in use of language, or any other thing that prevented the expression of the true agreement. Coleman v. Coleman, 153 Iowa 543, 552, 133 N.W. 755; Merle O. Milligan Co., Inc., v. Lott, 220 Iowa 1043, 1046, 263 N.W. 262.

█ We have carefully examined this record, setting it forth herein at considerable length—too much so perhaps. The clear and convincing proof required in these cases means merely that the proof is so established that no reasonable uncertainty or doubt as to the truth thereof confronts the trier of fact.

Under this record, Martin, in 1951, considered the property well worth the $4000 he put into it. In 1953, when, by the record, properties in Dakota City had less value than in 1951, he valued the property at $6000 (as evidenced by the surrender

916

of the $2000 note); or the note transaction was a phony deal, as claimed by appellant, and for which claim there is some basis in the record. With the possible exception of two months' payments, he has received his $50 payments.

We think a fair evaluation of this record shows that in 1951 the Jensens had no thought or purpose other than to assist Mrs. Miller in saving her home and they participated therein to appease Martin's obsession to the son, Leonard; that if and when the $4000 was repaid by Mrs. Miller's payments, title would, through them, revert to her. At no time have the Jensens invested anything in this transaction, although, if the $2000 note be a genuine transaction, they made $2000 by releasing their contract to Martin.

We think it was intended by all parties that this $4000 was a loan. The trial court valued the property at $5500. Martin apparently places it at least $500 higher. Equity and good conscience, under the rule announced in Coleman v. Coleman, supra, require that this deed be legally declared to be what it truly is, a mortgage for $4000, on which should be credited the $50 monthly payments made thereon by Mrs. Miller and to continue in effect according to the interest and payment terms announced in the Jensen contract.

The decree of the trial court is reversed and the cause remanded for a decree in accordance herewith.—Reversed.

All JUSTICES concur.